ABRAHAM *v.* HARVEY, et al.

No. 42418          December 17, 1962          147 So. 2d 639

*Ralph L. Landrum,* Jackson, for appellant.

*B. R. Hardin, Noel Buckley,* Jackson, for appellee.

RODGERS, J.

This case came to this Court from the Chancery Court of the First Judicial District of Hinds County, Mississippi, in which Mrs. Mary Ruth Royals Harvey filed an original bill against appellant, Joseph Abraham. She sought a decree from the chancery court requiring defendant to convey to her by warranty deed title to certain real property which she had verbally contracted to purchase, or, in the alternative, she requested that she be given judgment against Joseph Abraham for money paid to him on the purchase price for property, for money expended to improve the property purchased, and also funds advanced to establish a business upon the purchased property. Defendant in the court below filed a general demurrer to the bill, in which he alleged that there was no equity on the face of it. The chancellor overruled the demurrer, and defendant filed an answer and a cross bill, in which he alleged that the cross-defendant, appellee here, refused to carry out the agreement to purchase the property and that such failure resulted in his loss of the property by foreclosure. He charges that he was damaged in the sum of $5,000. The cross-defendant filed her answer denying the cross-bill, whereupon the case was submitted to the chancellor upon pleadings, and oral and written evidence, resulting in a judgment in favor of appellee in the sum of $2,-032.25, together with 6% interest from the date of the decree.

The facts in this case are as follows: Mr. and Mrs. Herman Harvey are natives of California. Mrs. Harvey had been previously married to a Mr. Royals and had inherited some property from him. She was desirous of investing this money in a business in an effort to "make a new life for her children." Mr. and Mrs.

Harvey discovered that appellant had some property he desired to sell for the sum of $20,000. He asked that $4,000 be paid down but Mrs. Harvey could raise only $1,000, and he consented to take $1,000 provided that they would execute two notes, one for the remainder of the balance of the purchase price, and the other for the balance of the down payment, which amounted to $3,-000. Mr. and Mrs. Harvey agreed to this but on March 22, 1961, defendant tendered appellee only one promissory note in the sum of $19,000, and a trust deed on the property to be signed by Mrs. Harvey. She paid appellant, Abraham, $1,000 and executed the deed of trust and note for the sum of $19,000. Mr. and Mrs. Harvey testified that Mr. Abraham told them that he had paid spot cash for the property and that there was nothing against it. Later, when Mrs. Harvey wanted to buy an ice cream machine, she went to Mr. Abraham in an effort to secure a $1,500 loan on her equity in the property. When Mr. Abraham would not make the loan, she went to the White System and was advised that there was a prior trust deed on the property to a third party and that she did not have a deed. Appellee again went to Mr. Abraham in an effort to secure the deed but he would not give her a deed to the property. He did, however, return the note and trust deed given him by Mrs. Harvey. The record shows that he later had his attorney write appellee and advise her that he would deliver a deed to the property provided she would return the trust deed and note. Appellee employed an attorney and filed this suit.

The testimony shows that after having made the initial payment, appellee later paid appellant an installment in the sum of $175.70. Appellee went into possession of the property and proceeded to remodel the building and do extensive repairs to the plumbing and interior, and repair equipment located therein. She also purchased machines to be used in the business, and opened

a sandwich and soft drink establishment. She charged that it was necessary to purchase a license to operate, and to purchase certain personal property to be used in the business. Appellee introduced a list of items showing expenditures, and for personal property used in the business for which she sought recovery of appellant. The chancellor allowed the $1,000 originally paid and the $175.70 installment and other items claimed, but denied recovery for some items, which will be mentioned later.

There are two assignments of error presented for our consideration: (1) The general demurrer to the amended bill should have been sustained; and (2) the findings of the court below were contrary to the law and evidence.

The answer filed by defendant to the original bill stated ''Respondent most respectfully charges that the oral agreement with reference to the sale of land is contrary to the statute of frauds and contrary to the laws of the State of Mississippi'', but it is not argued that the demurrer should have been sustained upon the ground that the original bill sought specific performance of an oral contract in violation of the statute of frauds. The argument presented here is based upon the proposition that under the allegations of the original bill, the complainant did not offer to do equity by offering to deliver to Mr. Abraham the property then in her possession, that (a) equity looks to intent and will regard substance rather than form, (b) he who comes into equity must have clean hands, and (c) he who seeks equity must do equity.

The argument for appellant is, in effect, that demurrer to the original bill should have been sustained because the original bill filed by appellee did not show that she had delivered possession of the property to defendant, nor did it show that she was willing to put appellant, defendant in the court below, into possession

of the property; therefore action could not be maintained since it did not offer to do equity. We do not believe this rule is applicable under the facts in this case, but if the rule were applicable, the facts in evidence would clearly bring this case under the following exception to the rule "* * * if the agreement of sale is absolutely void, the vendee need not restore or even offer to restore possession of the land as a condition of becoming entitled to the return of money paid." 55 Am. Jur., Vendor and Purchaser, Sec. 610, p. 1003; see also Secs. 607-609, pp. 1000-1002. Cf. 91 C. J. S., Vendor and Purchaser, Sec. 170, p. 1130.

The cause of action brought by appellee is not a suit to rescind the verbal contract, but is actually a suit to enforce it, or in the alternative, to require defendant, appellant here, to pay the money received as a result of his refusal or inability to convey a clear title to the property sought to be purchased, and for damages arising out of the deceit practiced. It will be remembered that the chancellor held as a matter of fact that appellant told appellee that he had paid "spot cash" for the property here involved, and that there was nothing against the property, when, as a matter of fact, there was a large purchase-money mortgage on the property due by appellant to a third person.

It has been pointed out by the textwriter of 4 Am. Jur., Assumpsit, Sec. 27, p. 517, that: "It is common practice for purchasers of real estate, upon the refusal or inability of the vendor to convey, to bring an action of assumpsit for money had and received to get back the purchase price, instead of covenant to recover damages for a breach of the contract. * * * It also lies to recover back money paid under a contract which is void for any reason, as where there was want of mutuality, or where the statute of frauds was a good defense." See also 58 C. J. S., Money Received, Sec. 14, p. 923.

The case of Milam v. Paxton, 160 Miss. 562, 134 So. 171, is similar to the case now before the Court. In this case a suit was filed to require defendant in the court below to deed certain real property to complainant and prayed for general relief. It was alleged that defendant had verbally promised to deed the land in question to complainant, that complainant had paid part of the purchase money to defendant, and that although defendant continued to promise to deed the property to complainant, the deed was never delivered. The defendant filed two demurrers to the bill, a general demurrer alleged that there was no equity upon the face of the bill, and a special demurrer set up the statute of limitations as a defense. The chancellor sustained both demurrers and dismissed the bill. The Court reversed the judgment of the chancery court and pointed out that "The action of the court was right so far as concerns the prayer for specific performance. There was nothing in writing which described or identified the lands, or stated the total amount of the purchase price, or the terms of payment; and, in this state, part performance does not take the case out of the statute, which requires a contract for the sale of lands to be in writing. * * * But we think the bill states a case for relief in respect to the recovery of the purchase money paid, and that the right of such recovery is not barred by the statute of limitations. * * * It is a familar principle of law that, where payments are made by a purchaser under a parol contract for the sale of land, and the vendor refuses to complete the transaction by the execution of the necessary deed, the purchaser may recover the amount or amounts paid as for money had and received * * *".

In the case of Tchula Commercial Co., et al. v. Jackson, 147 Miss. 296, 111 So. 874, this Court pointed out that: "The suit in the present case is not to specifically enforce a parol contract. It is for the recovery of damages from promises made by one party and relied upon

by the other, whereby he has been damaged by trusting the party upon whom he relied. * * * Taking the facts to be true as thus found by the chancellor, we are of the opinion that the complainant was entitled to relief.'' See also Fuqua v. Joudon, 172 Miss. 11, 158 So. 795; Welch v. Lawson, 32 Miss. 170.

■■ The office of a demurrer is to test the bill of complaint on the ground that defendant ought not to be required to answer the bill of complaint because it states no cause of action against defendant, and complainant is entitled to no relief as a matter of law; or that there is a legal defect apparent on the face of the bill which is fatal to the cause. ■■■ The former is the subject of a general demurrer, while the latter is brought to the attention of the court by a special demurrer. 19 Am. Jur., Equity, Secs. 300, 301, pp. 217, 218.

Judge Griffith used the following language in describing a general demurrer: ''The general demurrer, to put it tersely, challenges the right to recover upon that bill in that court *in toto,* or to restate it as it has always been stated, it directly challenges the whole bill upon the primary equitable substance of it, or the whole cause upon the propriety of its cognizance in a court of equity * * *''. Griffith's Miss. Chancery Practice, 2d Ed., Sec. 290, pp. 274, 275.

■■ We are therefore of the opinion that the original bill in this case sufficiently states a cause of action in accordance with the authorities above-mentioned, and the demurrer should have been overruled.

■■ Appellant next argues that ''The finding of the court below was contrary to the law and the evidence.'' It is said that there were some unusual facts developed in the testimony, and that ''All the trouble was caused by the failure and refusal of the appellant to accept the deed and execute a deed of trust.'' We are of the opinion, however, that the chancellor was warranted in finding from the evidence in the case that appellant told

appellee he had paid "spot cash" for the property and that there was nothing against the property, when in fact he owed a large amount of money on it.

Appellant charged in the cross bill that he had attempted to get appellee to carry out the oral contract and to deliver the note and trust deed, and stated he had offered to deliver a deed, and the failure of appellee to carry out her understanding had caused him to lose the property by foreclosure of the original mortgage he had given against the property and he had been damaged as a result of the failure of appellee to carry out her agreement. The record shows, however, that the original bill was filed sometime before appellant's attorney wrote a letter offering to convey the property involved. The question as to whether or not appellant was willing to carry out his agreement and deed to appellee the property involved, unencumbered upon the redelivery of the note and trust deed, was a question of fact for the determination of the chancery judge. See Hutton v. Hutton, Exec. Etc., 239 Miss. 217, 119 So. 2d 369. This Court has repeatedly held that a chancellor's finding of fact is reviewable on appeal only when it is manifestly wrong. Griffith's Miss. Chancery Practice, 2d Ed., Sec. 674, pp. 741-743; Fleming v. Fleming, 213 Miss. 74, 56 So. 2d 35; Skrmetta v. Moore, 227 Miss. 119, 86 So. 2d 46; Smith v. Cook, 213 Miss. 876, 58 So. 2d 27; Sharp, et al. v. Learned, 202 Miss. 393, 32 So. 2d 141.

The question of damages has given us considerable concern in this case. What damages should be allowed a vendee under a verbal contract to convey real property, where the vendee went into possession and made extensive improvements, and the vendor refuses, or is unable to deliver, a good title to the property, and a suit is brought growing out of the deceit?

In the case of Tchula Commercial Co., et al. v. Jackson, supra, where appellee recovered damages sustained as a result of deceit and fraud practiced upon him by

appellant, the Court said: "So, in undertaking to do justice to all parties according to the rules of law, as we understand them, we think the complainant should be made whole, but that he should not be allowed theoretical and fictitious valuations." The Court permitted the party defrauded in that case to recover all damages growing out of the fraud.

In the case of Milam v. Paxton, supra, this Court said: "It is a familiar principle of law that, where payments are made by a purchaser under a parol contract for the sale of land, and the vendor refuses to complete the transaction by the execution of the necessary deed, the purchaser may recover the amount or amounts paid as for money had and received * * *".

In the case of Herndon v. Harrisson, et al., Admr., Etc., 34 Miss. 486, a suit was brought for failure of a decedent to carry out a written contract to deed certain property to plaintiff. The administrator appeared and tendered notes given for the purchase-money. The court gave judgment for defendants, and this Court said: "This was according to the settled rule, that the purchase-money and interest shall be the measure of damages in such case, where no special circumstances exist, making the application of a different rule necessary. No special circumstances are shown to exist in this case, and consequently we perceive no necessity for departing from the general rule."

In the case of Cain v. Kelly, 57 Miss. 830, this Court permitted plaintiff to recover for losses incurred by him as a direct result of fraud of the party dealt with.

While it may be said that the holdings of this Court are not entirely clear on the question as to the damages which may be recovered upon failure to carry out a verbal contract, a general rule has been established by the great weight of authority of other jurisdictions. This rule is expressed in 55 Am. Jur., Vendor and Purchaser, Sec. 612, pp. 1004, 1005, as follows: "* * * the broad

general rule is laid down in a number of cases that if the failure to complete the purchase is due to the fault of the vendor the purchaser will be allowed compensation for his improvements made upon the property in reliance upon the contract, at least to the extent that such improvements increased the value of the property.''

In the case of Carter v. Carter, 108 S. E. 765, 17 A. L. R. 945 (N. C.), the Court said ''* * * when the purchaser has entered into possession of the land, paid the purchase money, made improvements, on the faith of the vendor's parol promise to convey to him, which he refuses to do, and repudiates the contract by pleading the Statute of Frauds, the seller (sic) (purchaser) may recover not only the purchase money paid by him, but compensation for his improvements to the extent that they have enhanced the value of the land.'' There are cases from many states cited in the Annotation beginning on Page 949 to the same effect. Since that time the following cases have been reported sustaining this rule: Scott v. White, 58 A. 2d 490 (Md. 1948); Holste v. Baker, 26 N. W. 2d 473, (Minn. 1947); Morrison v. Farmer, 213 S. W. 2d 813 (Tex. 1948); Richardson, et ux v. Taylor Land & Livestock Co., et al., 171 P. 2d 703 (Wash. 1946).

We are now therefore of the opinion, in accordance with the foregoing authorities, that the chancellor correctly allowed appellee to recover the purchase-money paid to appellant, and that the items of improvement made on the property by the purchaser, as shown by the testimony, were properly allowed as damages. However, we do not believe that the items allowed and set out in the decree of the court, which were not improvements on the property but were items expended by appellee for personal property, license, and material pertaining to the operation of the sandwich and soft drink establishment, should have been charged against appellant as damages. The following items are therefore

disallowed: $65 paid for cash register; $169 incurred for paper cups, etc.; $25 paid for privilege license to City of Jackson; $65.29 paid on purchase of ice machine; $3.50 over-allowance on hood attached to stove; and $25.97 for parts and equipment. The foregoing items totaling the sum of $353.76 will be deducted from $2,032.-25 allowed by the chancellor, leaving a balance of $1,679.-49. Judgment will be entered here for the latter sum, together with 6% interest thereon from the date of the decree of the chancery court.

The decree of the chancery court will therefore be affirmed in part and reversed in part, and judgment for the sum of $1,679.49, with interest, will be entered here in favor of appellee.

Affirmed in part and reversed in part.

*Lee, P. J., McGehee, C. J., and Kyle and Ethridge, JJ.,* concur.