CALLICOTT *v.* GRESHAM, et al.

No. 42908 February 24, 1964 161 So. 2d 183

104

*Smallwood, Darden & Sumners,* New Albany, for appellant and cross-appellee.

*Hugh N. Clayton,* New Albany; *John B. Farese,* Ashland, for appellees and cross-appellants.

Rodgers, J.

This case came to this Court from the Chancery Court of Tippah County and is an appeal from a decree in

favor of W. B. Gresham, M. D. Gross, Troy Renick and John B. Farese, in which appellees were awarded a judgment of $10,000 damages against appellant. The appellees cross-appealed.

The dispute between the parties arose under the following circumstances: Prior to May 9, 1962, appellant owned 4,256 acres of land, known as the "Rainey lands", located near New Albany, Mississippi. The appellant does not reside on the ranch. He resides at Keene, Texas, and operates a ranch by an employee-manager. The appellees were interested in buying the "Rainey ranch" and for several years the parties had discussed the purchase of the property. Finally, on the above date, they met at the "Lodge House" on the property and reached a preliminary understanding that appellant would give appellees a ninety-day option to purchase the property for the sum of $316,000. Appellees claimed that appellant's ranch manager told them at the time he would do certain bulldozer work on the property to clear up the land then being denuded of timber, which would offset the sale of $1,000 worth of timber sold to Mr. Null. Later, on May 14, 1962, the parties met in the office of appellant's attorney, who had previously drawn up the option. Mr. Farese, one of the appellees, discovered that the option did not provide the right of ingress and egress for the purpose of showing the property to prospective purchasers, nor did it describe the land from which the timber sold to Mr. Null was then being cut. Appellant's attorney pointed out the difficulty of showing in the long description of the land set out in the option the land from which the timber was being cut. In order to avoid rewriting the option, a paragraph was typed and attached to the option as an addendum, giving appellees the right to enter the premises for the purpose of showing the property to prospective purchasers, and to make the necessary survey. Appellees contended that appellant and his farm

manager agreed after the contract was signed that they would clear and bulldoze the land from which the timber was being removed. Appellant denies he agreed to have any bulldozer work done. Moreover, the option does not provide for such work. After the option was signed, appellees asked appellant for the keys to the locked gates and were informed by the ranch manager, in the presence of appellant, that the gates would be open as long as the timber was being removed, and thereafter appellees would be given the key then in the possession of Mr. Null, who was then running a small sawmill on the property.

The appellees took prospective purchasers to the ranch, and although appellees could at times get into the main gate, there were many times when they found the gate locked. On one occasion, appellees took three prospective purchasers to the property, two of whom had agreed to pay $380,000 for the property, provided the third partner did not disapprove the purchase. They found the gates locked, and the third partner was unable to see the ranch. Appellant contends there were other gates which were unlocked, and that the front gate had a ''slip link'' which would permit the chain to be separated without opening the lock. Appellees point out, however, that the unlocked gates lead to roads which could not be traveled in an automobile, and that they had no knowledge that the chain on the main gate could be opened without a key. The ninety-day option expired. Appellees filed suit seeking to recover damages for breach of the contract, particularly that part wherein the appellant agreed to permit the appellees ingress and egress. The chancellor, after having heard the testimony, reached the conclusion that the appellant did not carry out the agreement in the contract, allowing ingress and egress to the ranch, and that appellees were entitled to recover damages. He was of the opinion that the only actual damage shown was the $10,000 paid for the

option. The chancellor also held that the evidence introduced as to the alleged claim by the appellees for $64,000 lost profit was too speculative and uncertain on which to base a judgment.

I

Appellant contends on appeal that the chancellor was in error in finding, as a matter of fact, that he breached any duty under the terms of the contract, and erred in awarding damages to appellees. It is also contended that the chancellor permitted one of the appellees to be impeached by his coadventurer and counsel.

■■ ■ We have carefully read the testimony introduced in the trial of this case, and we are satisfied that the contract required appellant to permit appellees to go upon the Rainey Ranch. Moreover, the testimony shows that the appellees knew that some of the gates were kept locked by appellant's ranch manager, and that in order to show the ranch to prospective purchasers it would be necessary to have keys to the locks, therefore appellees requested the keys. In addition, appellant was duty bound to see that appellees were given reasonably free ingress and egress to the entire ranch, including the buildings, and it was not necessary for the appellees to repeatedly ask for the keys. Moreover, the ranch manager advised appellees, in the presence of appellant, that the main gate would be open during the time the timber was being removed.

■■■ We are of the opinion that the chancellor reached the right conclusion, from the evidence, that the appellant did not carry out his agreement to permit appellees ingress and egress, as provided in Paragraph 2 of the option. Appellant contends, however, that appellees did not rescind the contract and therefore they cannot claim the return of the money paid for the option. It is argued that the appellees should have shown that they were damaged by the alleged breach of the contract,

and that no evidence was introduced in the instant case showing that the appellees were injured as the result of the failure to give appellees ingress and egress. In support of this argument, appellant cites the general rule that "To warrant the recovery of damages in any case, there must be a right of action for a wrong inflicted by the defendant and damage resulting to the plaintiff therefrom. Wrong without damage, or damage without wrong, does not constitute a cause of action." 15 Am. Jur., Damages, § 3.

This Court has stated the rule as follows: "It is fundamental in all our laws of chancery procedure that before any person may complain or sue in any equity court, he must set up a cause of action of which an essential element is that he must show that he has been injured, that what has been done results in actual harm to him * * *". Dunn v. Lowe, 172 Miss. 342, 155 So. 331. We agree fully with the rule set out, but we believe the rule is not applicable in this case because we are of the opinion that appellees presented a cause of action and showed by their evidence that they were damaged.

██ ██ There is ample evidence in the record, both circumstantial and direct, to show that appellees would have sold (in fact, had sold) the Rainey Ranch, had they been permitted to show it to prospective purchasers. The evidence rises higher than a mere "probability of such sale." Since appellant breached the contract, the appellees are entitled to damages.

██ ██ If one party to a contract prevents another party from carrying out his part of the agreement, he becomes liable in damages for the breach of the contract. 12 Am. Jur., Contracts, § 386, p. 961. The foregoing rule has been expressed as to options in the following language: "It is a general rule that an optionor who has given the right to purchase property within a specific time may not do any act or omit to

perform any duty calculated to cause the optionee to delay in exercising the right." 55 Am. Jur., Vendor and Purchaser, § 40, at p. 510; Anno. 157 ALR 1312.

 ██ The testimony shows that Mr. A. R. Wettenkamp and Mr. Arthur Taylor had decided to purchase the property, provided their partner, a Mr. Coleman, agreed. Mr. Coleman came from his home in Missouri to Mississippi to see the property, and his partners felt sure that he would agree for them to purchase the property. They also believed that the purchase price of $380,000 was "in line." This purchase would have meant a profit of $64,000 to the appellees. The chancellor reached the conclusion, in his opinion, that the evidence as to the amount of the loss of profits was too uncertain and speculative on which to base a firm judgment. It is apparent, however, that the chancellor determined that a sale for some price would have been made, had appellees been able to have shown the Rainey Ranch to Mr. Coleman. We agree with the chancellor's opinion that the claim of the appellees for $64,000 profits was not sufficiently established to afford a decree for profits. On the other hand, we are of the opinion that the appellees were damaged. They purchased the right to have an opportunity to sell the Rainey lands, and in order to do so, it was necessary to show the property to the prospective purchasers. Appellees were denied the very opportunity they purchased, and are therefore entitled to recover damages for the breach of the option contract.

 ██ This Court has held that where a suit is brought for a breach of a contract, and the evidence sustains the claim, the complainant is entitled to recover at least nominal damages for the failure of the defendant to carry out his agreement. B. Bluethenthal Company v. McDougal, 163 Miss. 406, 141 So. 291. Moreover, as a general rule, the recovery should not be limited to nominal damages where the complainant is shown to

have suffered actual damages as a result of the breach; in such case, he is entitled to substantial damages. 15 Am. Jur., Damages, §7, at p. 395. In the case of Jamison v. Moon, 43 Miss. 598, this Court held that the measure of damages in actions ex contractu, is the actual damages naturally resulting from the breach of the contract. See also Vicksburg & Meridian R. R. Company v. Ragsdale, 46 Miss. 458.

■■■ It is true that ordinarily damages arising from the breach of a contract cannot be measured by the consideration of the contract but must be determined by the value of the thing contracted for. On the other hand, it is said: ''However, where the character of the contract is such that it admits of no other method of admeasurement, the price which is agreed to be paid may be adopted as the measure of damages.'' 25 C. J. S., Damages, §74, at p. 568. This rule is also expressed in 15 Am. Jur., Damages, '§ 44, p. 445.

It is said in 92 C. J. S., Vendor and Purchaser, '§593, p. 647, that ''Where it is established that a purchaser is entitled to substantial damages by reason of the vendor's failure or refusal to convey * * * the measure of damages is based on the actual injury which the purchaser has sustained by the vendor's breach of the contract, together with the return of the purchase money which he has paid, with interest from the date of payment, except, according to some cases, where the purchaser has had possession and use of the premises. In some cases it has been said that the value of the bargain at the time of the breach, with interest from that time, is recoverable.'' See also Hawkins v. Merritt, 19 So. 589 (Ala. 1896.)

■■■ We are of the opinion that under the circumstances in this case, the chancellor was correct in holding that appellees were entitled to recover the amount of the money paid for the option to purchase, together

with legal interest until paid. See Y & M V R. R. Company v. Fisher, 102 Miss. 702, 59 So. 877.

## II

It is argued that the chancellor allowed the witness Gross to be impeached by his coadventurer and counsel, and for that reason the case should be reversed.

During the trial, appellee Gross was introduced as a witness, and on cross-examination admitted writing appellant a letter in which he absolved appellant from blame because the option failed and stated that he blamed two of his coadventurers. It is argued that the letter would have exonerated appellant had his admission not been impeached. On redirect examination, this witness was asked to explain the letter by his attorney: Q. "All right. Now, Mr. Gross, this letter that Mr. Summers has introduced, dated November 10th 1962, I want you to explain to the Court why you wrote that, the reasons, and whether or not the statements are true, on whether what you are saying today under oath is true. Now explain this. Mr. Summers: If the court please, we object, because it's an effort to impeach what he's admitted that he's already written, and he is not only their witness, he's the party of the lawsuit. * * * The Court: Objection is overruled. * * * By Mr. Farese: Q. All right. Now, direct your attention to the statement contained in this letter, and I'm reading from it — about the tenth line for their purpose, where you said (reading) 'You and Mr. Moore have been nice to me, and Mr. Moore being gone on July the 6th and July the 20th did not cause the sale to not go through.' Q. Is that true or false? A. That is false. I found out that it is false. Q. Now, these statements about the prices, are those true, or are they false? A. I found them to be false. Mr. Summers: I want to make the objection again that they are undertaking to impeach their own witness."

In support of this contention that appellees were attempting to impeach their own witness, appellant has cited the following cases: Manning v. State, 188 Miss. 393, 195 So. 319; Toler v. Owens Plumbing Co., 231 Miss. 753, 97 So. 2d 728; Western Union Tel. Company v. Dodson, 98 Miss. 745, 54 So. 844. We do not believe these cases are in point here. For example, in the Toler case, supra, the plaintiff, in a suit for fire damage, resulting from defendant's alleged negligence in the installation of a furnace, testified, when called as an adverse witness by defendant, that he did not think defendant should pay for damage. The trial court promptly sustained an objection to attempt by plaintiff's counsel to impeach his client by questions to show that "You are not the real party at interest in this lawsuit." Upon objection by defendant, that this line of questioning was entirely contrary to the pleading and the whole theory of the suit and was an attempt by plaintiff's counsel to contradict his own client, the objection was sustained, and this Court said in that case "We think the trial court was correct in doing this."

■ ■ In the instant case, there is no effort to impeach the witness. The questions here were asked in an effort to give the witness an opportunity to explain why he made damaging statements and admissions. It is true, as a general rule, that where a party on trial in an action advances contentions which are inconsistent with his prior conduct in relation to the matters in controversy, such prior conduct may be shown as being in the nature of an admission. 31 C. J. S., Evidence, §291, p. 1050. On the other hand, as shown in 31 C. J. S., Evidence, p. 1158, § 374, "When a party to an action makes an admission at the trial, he should be permitted to explain to the jury the extent of the facts he intended to admit where the adversary was not misled or put to any disadvantage in reliance on the admission." ■ ■ The right of declarant to explain,

rebut, or contradict admissions against interest, except when formally made at the trial, an admission is at most only evidentiary matter which may be rendered nugatory by other evidence in the case.

In the case of Atlantic Life Ins. Co. v. Serio, 171 Miss. 726, 157 So. 474, the plaintiff in a suit on an insurance policy wrote the insurance company and said: "You stopped payments of claim in December, 1926, and I was still disabled up to June, 1928, the case is now in its arrested stage but I am not claiming any disability because of present condition." The insurance company claimed this was an admission, that the claimant was under no disability from June 28, 1928, to the date of the letter. The Court said, however, "The appellee's evidence, if true, negatives this admission, and his explanation thereof is that he was then in need of money and was willing to accept the amount he then requested in settlement of his claim for all payments then past due. 'When no element of estoppel exists (and none here does) an extrajudicial admission is not conclusive upon the party making it or to whom it is attributable.' 22 C. J. 417. Such an admission is 'but an item of evidence and is therefore not in any sense final or conclusive. The opponent, whose utterance it is, may none the less proceed with his proof in denial of its correctness; it is merely an inconsistency which discredits, in a greater or lesser degree, his present claim and his other evidence' ", citing authorities. The foregoing rule has long been followed in this State, both in the criminal and civil cases. See Tubb v. State, 64 So. 2d 911 (Miss.); Kyle, et al. v. Peoples Bank & Trust Co., 186 Miss. 287, 187 So. 534.

██ ██ This Court has consistently followed the rule that a chancellor's finding of fact will not be disturbed unless manifestly wrong. Henry v. Gulf, Mobile & O. R. Co., 202 Miss. 669, 675, 32 So. 2d 199; Sharp v. Learned,

202 Miss. 393, 32 So. 2d 141. See also Griffith's Miss. Chancery Practice, (2d Ed. 1950), § 674, p. 741.

From the foregoing rules of law and the facts shown by the evidence in this case, we are of the opinion that the chancellor was correct in his holding, and the decree should be affirmed. The decree is therefore affirmed on direct and cross-appeal.

Affirmed.

*Lee, C. J., and Ethridge, McElroy and Patterson, JJ.,* concur.