204 So.2d 457 (1967)
B.A. TANSIL
v.
John D. HORLOCK, Jr., et al.
No. 44613.
Supreme Court of Mississippi.
November 28, 1967.
*459 Jason H. Floyd, Gulfport, for appellant.
Richard B. Graves, Houston & Johnson, Joseph R. Meadows, John A. Evans, Gulfport, for appellees.
RODGERS, Justice:
B.A. Tansil, the appellant, filed suit in the Chancery Court of Harrison County against John D. Horlock, Jr. and John Kovace, seeking a decree from the court requiring specific performance of a construction contract and a contract for the sale of property, or, in the alternative, a judgment for damages sustained by the plaintiff for the breach of these contracts. The unpaid materialmen and laborers were joined as parties defendant, including Bailey Mortgage Company, which held a recorded construction lien upon the property involved. Dr. Otto Binder and his wife, Erika Binder, who had contracted to buy the house after the original suit had been filed and lis pendens notice placed of record, were also made parties defendant. The defendants filed their respective claims, and Bailey Mortgage Company filed its answer and claim of lien upon the property involved. John D. Horlock could not be found, and process was obtained on him by publication. A judgment pro confesso was taken against him, but no personal judgment was entered because of the lack of personal process.
This controversy had its inception under the following circumstances. B.A. Tansil was employed in Louisiana and resided there. He decided to establish his home on the Mississippi Gulf Coast, and went to see John Kovace, a man engaged in the sale of real estate as broker for Walker Brothers. Mr. Kovace advised him to contact John D. Horlock, Jr., a building contractor. The appellant selected a desirable building lot in the subdivision of Pass Christian Isles, offered for sale by John Kovace. On November 7, 1964, the appellant and John D. Horlock, Jr. entered into two contracts, one to purchase the selected lot, and the other a building contract in which the contractor agreed to build the house described in the attached specifications for the sum of $21,500.
The appellant made application to Bailey Mortgage Company for a Veterans Administration loan in the sum of $21,500, which was approved by the Veterans Administration. The appellant advanced to John D. Horlock the sum of $500 in cash. It developed, however, that the contractor could not obtain funds to finance the construction of the house; thereupon, John Kovace entered into an arrangement with the building contractor, Horlock, to obtain financial aid in building the house. Horlock deeded the lot to Kovace, who in turn borrowed money from a friend to put down the foundation. Kovace then procured a loan from Bailey Mortgage Company to complete the building so that it could be sold to appellant under the original contract. Bailey Mortgage Company advanced $9,675 upon the statement of Kovace to the mortgage company's title insurance attorneys that all materialmen and labor liens had been satisfied. When the construction had progressed so that the contractor could make an application for a second advancement of funds from the mortgage company, it was discovered that the materialmen and laborers had not been paid, and the title insurance attorneys would not approve the additional construction loan.
Mr. Kovace contends here that the reason the materialmen and laborers had not been paid was that Mr. Tansil had demanded additional changes in the building, and that these changes increased the cost of the building. It is apparent, however, from the testimony that the changes made in the construction of the building were actually changes made to meet the conditions required by the terms of the contract, except *460 an item of $100 for a better grade of flooring and a short counter which added an additional $30 to the contract price.
Mr. Kovace testified that he had agreed for Mr. Horlock to draw $400 to build the building, but that he had gotten an additional $100 as a loan.
Mr. Kovace finished the building as required by the Veterans Administration inspector, but would not close the contract by paying the outstanding materialmen and laborers liens and deeding the property to Mr. Tansil, the appellant, for the contract price of $21,500. He demanded that Mr. Tansil pay the unpaid bills due the materialmen and laborers, in addition to the contract price. He contended that the building contract between Tansil and Horlock was of no concern to him, and that the building was worth much more than the contract price. He then contracted with Dr. and Mrs. Otto Binder to sell the building to them, whereupon appellant sued for the specific performance of the contract he had with John D. Horlock to sell the property to the appellant, upon the ground that John D. Horlock and John Kovace were joint adventurers in the building venture.
The case was tried, and the chancery court entered a decree denying specific performance of the construction and sale contracts, but allowing a personal judgment against John D. Kovace for the total claim of the mortgage company, the materialmen and laborers, and B.A. Tansil for certain damages, but limited the claims to the value of the property involved. The court ordered the house and lot sold by the clerk in the event the various claims were not paid by John Kovace within thirty days. The court directed that out of the proceeds of the sale of the property, the costs be paid first, Bailey Mortgage Company be paid second, and finally the other claimants, including appellant, be paid from the remainder of the proceeds. The decree provided that in the event the funds were insufficient to liquidate the entire claim, the last claimants were to be paid their pro rata share from the balance, after the amounts due on the mortgage and the costs were paid.
The Chancellor, in a well considered opinion, correctly held that Mr. Horlock and Mr. Kovace were joint adventurers in the construction of the house agreed to be built for B.A. Tansil. The testimony shows that Mr. Kovace went into the venture of building the Tansil house with the view of selling other lots. He knew Mr. Horlock had agreed to sell the constructed house to Mr. Tansil. In fact, all his acts in the joint adventure were done in an effort to build the building so it could be sold to Mr. Tansil; nevertheless, in spite of his efforts, he made it impossible for Mr. Horlock to deed the property to Mr. Tansil by taking a deed from Mr. Horlock to the property and later contracting with Dr. and Mrs. Otto Binder to sell the property to them.
In the instant case the chancellor applied the rule of damages involved in abortive sales of land between vendor and vendee as set out in Abraham v. Harvey, 245 Miss. 449, 147 So.2d 639 (1963), and Callicott v. Gresham, 249 Miss. 103, 161 So.2d 183 (1964). We are of the opinion, however, that these cases and the other similar cases (Milam v. Paxton, 160 Miss. 562, 134 So. 171 (1931)) are not applicable to the facts in this case, because in Abraham the verbal contract to sell real estate was unenforceable, and in Callicott we agreed with the chancellor's holding under the facts in that case that "lost profit was too speculative and uncertain on which to base a judgment." See Crystal Springs Ice Co. v. Holliday, 106 Miss. 714, 64 So. 658 (1914). In the instant case, however, we are now confronted with a written contract which is enforceable and with evidence of damages resulting from a breach which are not speculative. If Mr. Horlock had finished the building in compliance with his contract and had been financially able to meet his obligations to *461 the materialmen and laborers, there can be no question that the court would have required him to pay the liens and make a deed to the appellant upon receipt of the contract price. The first question to be decided here is: Does this contract bind Mr. Kovace? We think the facts are ample to show that, if Mr. Kovace was not, in fact, the actual silent partner in the building of the Tansil house, he was at least a joint adventurer with full knowledge of all agreements between the parties and was in full control of the financial arrangement, to the end that he would receive all profits, if any were realized, except $400 he agreed to pay Mr. Horlock for building the house. It is clear from the testimony in this case that there was an understanding between Mr. Horlock and Mr. Kovace that Mr. Kovace would furnish the necessary finance and Mr. Horlock would do the work in building the Tansil house, and that they would get the profits. The Chancellor was correct in holding that they were joint adventurers. See cases collected in Annot., 48 A.L.R. 1055, 1067 (1927); Annot., 63 A.L.R. 909, 916 (1929).
In Sample v. Romine, 193 Miss. 706, 8 So.2d 257 (1942), this Court said in discussing the question of joint adventurers that:
"An agreement, express or implied, for sharing in the profits is essential to a joint adventure, but the courts differ as to whether there must be an agreement to share in the losses. However, there need be no specific agreement to share in the losses, and if the nature of the undertaking is such that no losses other than those of time and labor in carrying it out are likely to occur, an agreement to share the profits may stamp it as a joint adventure, although nothing is said about sharing the losses."
The Court then said:
"A contract between the parties is necessary, but it need not be express or embodied in a formal agreement. It may be inferred from the facts, the conduct of the parties and the circumstances."
The rights, duties and liabilities of joint adventurers are similar to the rules which govern the rights, duties and liabilities of partners, except ordinarily the scope of a joint adventure is narrower than that of a partnership and is restricted to the particular venture. Accordingly, joint adventurers have the power to bind the other joint adventurers and subject them to liabilities to third persons in matters strictly within the scope of the joint enterprise. One joint adventurer may bind another on a contract which is necessary to carry out the venture. 30 Am.Jur., Joint Adventures § 55 (1958).
The transferral of the property here involved from Horlock to Kovace does not destroy the rights of appellant, Tansil, in his contract, because the transferral of property from one joint adventurer to another does not free it from the contract to sell made by the other joint adventurer.
In the early days of the English law, in the eighteenth century, the King's Bench held that all a buyer could recover for the failure of a seller to deliver a deed to land in compliance with a contract to sell was the sum of money advanced by the buyer, with legal interest and expenses. In short, a buyer's only remedy was restitution. In the United States, however, the rule adopted is that:
"(I)f the seller fails to convey the title he contracted to convey, the buyer has a right to damages measured by the value of the land at the time it should have been conveyed, less the contract price as yet unpaid."
Corbin, Contracts §§ 1097-98 (1964); Telfener v. Russ, 145 U.S. 522, 12 S.Ct. 930, 36 L.Ed. 800 (1892). This rule has been documented by cases collected in 92 C.J.S. Vendor and Purchaser § 537(c) (1955); Annot., 48 A.L.R. 12, 14 (1927); Annot., 68 A.L.R. 137, 140 (1930).
*462 This Court said in Gridley v. Tucker, Freem. Ch. 209 (1842), that:
"The rule in relation to executory contracts for the conveyance of lands is, that if the vendor fails to convey according to the terms of his contract, the measure of damages is the value of the land at the time of the breach, and not the price fixed in the contract."
The Court then said:
"If the rule were otherwise, it would in many cases afford the vendor encouragement to profit by an exercise of bad faith, whenever the land rose in value, between the dates of the contract and the time fixed for its execution: he would only have to refuse compliance, and pocket with impunity the enhanced value. The morality as well as the law of the contract certainly require that it should be discharged in good faith." (Freem. Ch. at 213)
Inasmuch as Mr. Horlock and Mr. Kovace were joint adventurers, Mr. Kovace is liable to Mr. Tansil to the same extent as was Mr. Horlock, because Mr. Horlock entered into the contracts for the purpose of carrying into effect the joint adventure.
The contract price for building the house and the sale of the property was fixed in the contract at $21,500. The appellant charged in his original bill that the property was worth $28,000 after it was completed. The appellee Kovace admitted in his answer that the property was worth approximately $8,500 more than the contract price, but alleged that "the excessive value of the house over the contract price  is the change and alteration made in the plans and specifications at the direction and instruction of the complainant." He also testified at one place in the record that the house was worth $30,000, because, he said, it was a show place. The issue to be determined, however, is: What was the market value of the house and lot on the day the contract was breached, the day when appellant stood ready to pay, and appellee refused to deliver the deed free of lien? It is apparent from the foregoing authorities that the appellant is entitled to recover the difference between the contract price of $21,000 and the market value of the house and lot on the date of the breach of the contract.
We are of the opinion that the Chancellor was correct in allowing the sums of $500 advanced to John Horlock and of $375 expended by appellant for moving and storage of furniture brought about because of the failure to turn over the possession of the house to appellant in compliance with the contract. We are of the opinion, however, that Mr. Kovace is not liable for the sum of $490 found by the chancellor to be due for damages resulting because of the cost of draperies made by appellant for the house. In order to hold one liable for special damages because of the breach in a contract, such damages must be expressly provided in the contract, or the party sought to be held liable must have had notice that the special damages would accrue as a result of the breach of the contract. American Express Co. v. Jennings, 86 Miss. 329, 38 So. 374 (1905); 25 C.J.S. Damages § 24(b) (1966); cf. Mississippi Power Co. v. Cochran, 167 Miss. 705, 147 So. 473 (1933).
We are of the opinion that the Chancellor did not abuse his discretion in refusing to require specific performance of the land sale contract, in order that he might do equity for all the innocent creditors. Specific performance rests largely within the sound discretion of the Chancellor, and it will not be required where the same results as to damages may be had without injury to innocent parties. We are of the opinion that the chancellor was correct in directing that the property be sold to satisfy the claims of the lien holders. We agree that the indebtedness due to *463 Bailey Mortgage Company should be satisfied first, for two reasons: (1) The mortgage company acted throughout the entire transaction in an effort to lend the appellant the money to buy a home with the aid of the Veterans Administration loan, and (2) The attorneys for the title insurance company carefully followed the requirements of section 356, Mississippi Code 1942 Annotated (Supp. 1966). See Wortman & Mann, Inc. v. Frierson Bldg. Sup. Co., 184 So.2d 857 (Miss. 1966).
After a careful study of the record in this case, we have reached the conclusion that the appellant is entitled to the damages above set forth, including the difference between the contract price of the house and lot and the fair market value of the house and lot on the date of the breach of the contract. However, the cost of extras, or additions, made to the house not provided for in the contract should be subtracted from the total amount of damages allowed. In summary, Tansil is entitled to recover from Kovace the following: (1) $500 advanced to Horlock on the purchase price; (2) $375 expended by Tansil for moving and storage of furniture; and (3) the difference between $21,500 and the fair market value of the house and lot at the time of the breach of the contract of sale, less extras authorized by Tansil.
This case must, therefore, be reversed so that the chancery court may determine damages only due by John Kovace to the appellant, B.A. Tansil, and so that a personal judgment may be entered against John Kovace in favor of B.A. Tansil for such damages as may be found to be due.
The decree of the chancery court is reversed, and a new trial granted as to damages alone.
Reversed and remanded.
GILLESPIE, P.J., and JONES, BRADY and SMITH, JJ., concur.