PATTERSON, Justice.
This is an appeal from a decree of the Chancery Court of Wayne County which dismissed the bill of complaint of Mrs. Harvey Jones by which she sought cancellation of a deed by her to the defendant, a judgment for recovery of funds expended from a joint bank account, a judgment for a loan, a judgment for agricultural rental payments, and an accounting. The complainant, being aggrieved by the dismissal of her bill of complaint, appeals to this Court designating numerous assignments of error. We affirm.
The appellant is the widow of Harvey J. Jones who died on May 21, 1967. There being no children of the marriage the appellant inherited the entire estate of her husband. The gist of her bill of complaint is that while she was ill and in a weakened mental condition the defendant placed himself in a position of trust with her and by violating this trust defrauded her of a portion of her property. More specifically, she charges that the defendant had been a close friend of her husband for many years and that she and her husband trusted the defendant implicitly. She then charges that after the demise of her husband, and due to her advanced age of seventy-six, she leaned upon the defendant for aid in her business and personal affairs. She states that she was incapacitated by breaking her leg October 20, 1968, which required her to be placed in a hospital. She further alleges that during her convalescence the defendant continued to act for her in a position of trust. While so doing, he caused a check to be drawn on her personal account payable to a joint account of the defendant and herself. She then states that it is possible she signed the check, but she does hot remember doing so.
Thereafter, she alleges that additional funds were placed in this joint account by her, approximating $31,686.40, and that since she has no recollection of the account or making a gift of any of the funds to the defendant, she should have a judgment for the funds expended by the defendant from this account. She also demands a judgment for rental due from an agricultural lease to the defendant, as well as judgment for the difference in value between the sale price of bank stock that she sold at the suggestion of the defendant, and the actual market price at the time of the sale.
The complainant then alleges that the defendant obtained by fraud a deed to 340 acres of her land in Wayne County. She states that on this occasion she was in a weakened mental condition and was told by the defendant that she should make a will to which she consented. Thereafter, an in *432 strument which she thought to be her will was presented to her at a time when she was too ill to read and that she signed the instrument, never being “told that a deed was mixed in the papers that she was signing nor that any notes were fixed in the said papers and it was not her intention nor of her knowledge that she signed a deed on the said date.” She therefore prays that it be cancelled.
The bill of complaint concludes with a prayer for an accounting and that if it appear therefrom that any further funds or property of the appellant are being held or have been wrongfully converted by the ap-pellee, then in that event she prays for a judgment for the amount disclosed.
The defendant by his answer avers that he has great love for the complainant, “loves her like a mother and loved her late husband like a father,” and that he saw to her needs and cared for her during the interval subsequent to her injury until shortly before this suit was filed. He stated that this affection was mutual and continued until the complainant became angry with him for refusing to remove her from a hospital in violation of her doctor’s orders. The defendant asserts that he is the owner of the land now in question by proper deed of conveyance executed by the complainant for adequate consideration. He denies that it was obtained by fraud. He further denies any indebtedness to the complainant, averring that the amounts alleged to be due by him were either drawn from a joint bank account of the parties or were given him in consideration of his caring for the complainant. He denies recommending the sale of the bank stock and denies that he acted in a fiduciary capacity whatsoever.
After a prolonged hearing, the chancellor entered his opinion denying the relief sought by the bill of complaint. He notes that both parties to the transactions are still living and he had the benefit of their testimony, together with that of numerous disinterested witnesses offered by both sides. He found the complainant to be a strong-willed person who could not easily be taken advantage of unless she was under narcotic medication and that the proof was insufficient to indicate that she was taking any kind of medication at the time of the transactions which would hinder her in any way. He further found that she was competent at the time she signed all of the instruments involved in the suit, noting particularly with regard to the joint bank account and the land deed that there were disinterested witnesses who testified as to the circumstances existing at the time of their execution. Additionally, he found that there was adequate consideration for the deed and that all of the transactions occurred as the defendant testified. It was his opinion that the suit was precipitated when the complainant became angered at the defendant for not following her request to remove her from the hospital.
A decree was entered in accord with this opinion dismissing the bill of complaint.
The primary assignments of error relied upon for reversal are (1) that the chancellor’s opinion was contrary to the law and against the overwhelming weight of the evidence, and (2) the chancellor erred in not finding that a fiduciary relationship existed between the parties from October 21, 1968, and at the time of the conveyance of appellant’s monies into a joint bank account and at the time of the conveyance of appellant’s real property to the appellee.
The record reveals the complainant to be an elderly woman who resided for many years in a rural area of Wayne County with her husband. The business affairs of the couple were largely handled by the husband during his lifetime. There is no evidence indicative of the appellant’s education or the lack of it. The record does disclose, however, that the appellee was an educated man who for many years prior to the death of Mr. Jones, had been a close friend to this elderly couple and had on occasion assisted them in their business affairs. Subsequent to the death of Mr. Jones the appellee continued to be held in *433 high esteem by the appellant to the extent that it can be truthfully stated their relationship approximated that of mother and son. This relationship continued until April 1969 when it was cast aside by the appellant while she was undergoing physiotherapy treatments in a hospital. The complainant’s version of this event was that she was in the Laurel Convalescent Center at the suggestion of her doctor. While there, she became convinced that the treatments, though not painful, would not help her regain the use of her leg and that she importuned the appellee to return her to his home. She referred to the hospital as, “That’s the crazy house,” and “I told him if I had to stay there much longer I would have the mange.” The defendant’s version of the incident was, “She told me if I didn’t get her out of there she was going to die. She said she just couldn’t stand it there any longer. She said, ‘If you don’t get me out of here, I’ll make you wish you did,’ and I said ‘You ought to stay here till Dr. Walley gets ready for you to go home.’ I said, ‘He said in a couple of weeks he believed you could go home,’ and she said, ‘Honey, I can’t live that long.’ ”
The defendant, in obedience to the doctor’s orders, declined to remove the complainant from the hospital; whereupon, she obtained the services of some of her relatives to convey her to her home in Wayne County. Shortly thereafter this suit was instituted.
The first assignment of error is that the decree of the chancellor is against the overwhelming weight of the evidence. We consider this assignment as it relates to the $2,000 check delivered to the defendant on June 28, 1968, and contended by the appellant to have been a loan and by the defendant to have been a gift. We note initially that this was prior to the time that the appellant contends there existed a fiduciary or confidential relationship between the parties. The total of the testimony relating thereto other than the check is as follows:
“Q. Did you ever make any gift to Mr. Singley?
“A. No.
“Q. I will ask you if you ever made any loans to Mr. Singley after the death of your husband ?
“A. Yes, sir.
“Q. What did you lend Mr. Singley?
“A. I lent him $2,000.00.”
The defendant’s testimony is:
“Q. Now what is that check ?
“A. That’s a $2,000.00 check she gave me. I had some bills to pay there and she wrote me a check for $2,000.00. That was on the 6/28 of 68.
“Q. How is that check endorsed ?
“A. L. E. Singley.
“Q. What did you do with the money ?
“A. I paid a debt with it.
“Q. And she loaned you that money didn’t she?
“A. No, sir, she didn’t. I tried to pay it back.
“Q. You tried to pay her back. You’re telling the Court then that that was not a loan ?
“A. No it wasn’t.”
The same type of testimony was offered with regard to a check for $3600 on September IS, 1967, payable to the Chatham Motor Company for two pickup trucks, one belonging to the defendant and one to the complainant, both however, being registered in the name of the defendant for the purpose of insurance coverage. The complainant testified:
“Q. Now this loan you made to Leroy, tell the Court about that that you made to Leroy before October 20.
“A. Well, I never did make any loan to him only to buy them trucks with.
*434 “Q. Buy the trucks. Is that the only loan you ever made to him ?
“A. Yes.”
4: # 4* * #
“Q. I will ask you whether or not you told him he could put one truck in his name, the one that was yours in his name?
“A. No, I didn’t tell him he could do it but he said I could do it and then if anything happened ‘my insurance will pay for both trucks, on your truck the same as it will mine.’ ”
The defendant testified that the complainant had given him money many times, but that she had never loaned him any. His testimony relating thereto was.:
“Q. She didn’t loan you any money?
“A. No.
“Q. As a matter of fact didn’t she loan you some money to buy some trucks with?
“A. No, sir. That money — she bought her own trucks and mine too.
“Q. The question was whether or not she did or did not loan you the money?
“A. She did not.
“Q. All right. I’m going to hand you an instrument and ask you if you can identify that instrument right here. Can you identify that ?
“A. Yes, sir.
“Q. What is that, Mr. Singley ?
“A. That is for two pickups. * * *”
* * * * * *
“Q. And whose name were those pickups registered in?
“A. She told me to register them- in my name.”
« * •>:- * -x- *
“Q. All right, go ahead with the explanation.
“A. I had a ’64 Ford pickup and she said, ‘when you buy a pickup,’ she said ‘get me a nice pickup,’ so the man come to her house and showed us some pictures of the pickups, so when I got ready to pay for the pickup the man said, ‘yours will be $1,200.00 difference.’ I said ‘I’ll write the check’ — I was going to pay for both of them — she said ‘no, I am going to pay for them and give you your part of the pickup,’ and that was her distinct words.
“Q. So one pickup was hers and one was yours?
“A. And still is hers.”
This testimony presented a question of fact for the lower court to determine. He resolved the conflict by finding for the defendant. Our duty ensuing therefrom is to determine whether his finding was manifestly in error. In giving consideration to all of the testimony and the existing circumstances, we are unable to state that the chancellor erred in resolving this conflict of evidence. He will therefore be affirmed. Rainey v. Rainey, 205 So.2d 514 (Miss.1967); Sims v. Sims, 203 So.2d 804 (Miss.1967); Hall’s Adoption v. Hall, 202 So.2d 641 (Miss.1967); and Callicott v. Gresham, 249 Miss. 103, 161 So.2d 183 (1964).
The next contention of appellant concerns the rent claimed for an agricultural lease. This claim arose prior to the time the complainant states the fiduciary relationship began, but continues into this period. Again, there is a direct conflict between the complainant and the defendant. The defendant states there never was any agricultural lease; that he was permitted to use the land as he saw fit for the amount of rent that he thought proper to pay. The complainant testified that the defendant and her husband had an agreement for specified rental sums for cotton and corn land. She testified, however, that she had no agreement concerning the rent and admitted that she had never asked for any. From this evidence we are of the *435 opinion that the chancellor was again not manifestly wrong in denying judgment for rent.
In her bill of complaint the appellant prayed for a judgment flowing from an alleged sale of bank stock below its fair market price, the sale being made by the complainant upon the recommendation of the defendant. The testimony of the complainant establishes that she was not in fact advised by the defendant to sell the bank stock. The testimony additionally fails to establish the charged inadequacies of the sale price, but rather indicates by the complainant’s testimony that the stock was sold after negotiation at a fair price. We conclude from the evidence that this contention is devoid of merit.
The next assignment of error is that the chancellor erred in not finding that a fiduciary relationship existed from October 21, 1968, continuously until April 1969. The chancellor failed to mention this in his finding of fact. The evidence of the complainant as well as the defendant establishes beyond doubt that a confidential and fiduciary relationship clearly came into being on October 21, 1968, and existed between the parties until terminated in April 1969. This gives rise to the more serious questions in the lawsuit. Did the defendant by his evidence overcome the presumed invalidity of the joint bank account and the warranty deed, such burden being thrust upon him by implication of law as the result of the fiduciary relationship? In re Will of Moses, 227 So.2d 829 (Miss.1969); In re Will of Woollard, 199 So.2d 243 (Miss.1967); Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959); McElveen v. McElveen, 233 Miss. 672, 103 So.2d 439 (1958); Bourn v. Bourn, 163 Miss. 71, 140 So. 518 (1932); and Ham v. Ham, 146 Miss. 161, 110 So. 583 (1926). In Ham, supra, the rule was announced that the usual method of proving independent consent and action in such cases and probably the only way it can be clearly proven, is by showing that in making the deed the grantor acted on the advice of a competent person, disconnected from the grantee and devoted wholly to the grantor’s interest. This rule has been brought forward to the present by In re Will of Moses, supra. The controversy, therefore, narrows to the sufficiency of the evidence adduced to overthrow the presumption by disclosure of a contrary intent by clear and convincing evidence of independent advice of a competent person devoted to the grantor’s interest. Applying these standards to the creation of the joint bank account we find that the parties to this transaction are both living and both testified at the trial. The chancellor thus had the unique opportunity to evaluate their testimony.
Of the fiduciary cases noted above, with the exception of Bourn, we note that one, or both, of the parties to the fiduciary relationship was deceased, placing great weight upon the presumption of invalidity since Mississippi Code 1942 Annotated, section 1690 (1956), the Dead Man’s statute, bars evidence of the survivor in defending against his presumed wrongful actions. The true facts being thus beclouded by death and statute, the presumption often gains almost invincible power. In reviewing this evidence we ascertain that Mrs. Jones was a patient in the hospital at the time she executed the joint ownership bank account of December 2, 1968. We note particularly that she does not deny the account, but rather states that she does not remember it.
The testimony of Mr. Mangum, the Chairman of the Board of Directors of the First State Bank of Waynesboro, was that he was summoned to the Wayne County Hospital on December 2, 1968, by the complainant; that Mrs. Jones sought advice from him concerning her banking business. The tenor of the conversation between him and Mrs. Jones was that she wanted to open a new account with some of the proceeds of a joint account then in existence between herself and her deceased husband. He testified that she wanted this account *436 to be in the name of the defendant and herself. His testimony was that he discussed this matter with the complainant and after the discussion, she stated that she wanted a joint account with the right of survivorship and that to accomplish this purpose he called Glen Dickerson, cashier of the bank, who brought the proper forms for opening the account. He testified that the complainant appeared normal and that upon Mr. Dickerson’s arrival the forms were signed in his presence, in the presence of Mr. Dickerson, and in the presence of a nurse who was called in to witness the signature.
The testimony of Mr. Dickerson and the nurse corroborates that of Mangum. There is no evidence whatsoever to indicate the defendant sought or in any way suggested the opening of this joint account. In fact, the evidence reflects that the complainant was the dominant and moving factor in having this instrument prepared. These witnesses were not interested in the bank account. The testimony of Mr. Man-gum was responsive to the complainant’s questions and was devoted to carrying out her interests, both as a banker and a friend of many years. Under these circumstances, the chancellor found that the joint ownership account was established as the complainant desired and requested it to be. He noted from her demeanor and testimony that she was a strong-willed person, not easily persuaded, and that this agreement was knowledgeably made after discussion with a disinterested person competent to advise on the subject. We have reached the conclusion that the presumption of invalidity was rebutted by the evidence; Hall v. Clements, 214 Miss. 445, 58 So.2d 925 (1952); and surely we cannot state that the chancellor was manifestly wrong even though he did not mention the confidential relationship.
The account opened was as follows:
JOINT ACCOUNT — PAYABLE TO EITHER OR SURVIVOR
We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account of any part thereof may be withdrawn by, or upon the order of, either of us or the survivor.
It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.
By the terms of the account the deposit became the joint property of the parties. The defendant used a great portion of the account for the payment of his bills and to a much lesser extent the payment of the complainant’s bills. From all of the evidence this was precisely what the complainant desired and voiced no objection until the disagreement in April the following year. Assuming, but not deciding, there are conditions under which the joint owners of a bank account might be required to account to each other for the withdrawal of the funds, we are of the opinion that the facts of this case require no accounting as it accomplished the purpose for which it was knowingly created.
The next assignment of error is that the court erred in not cancelling the deed executed by the complainant to the defendant. Assuming, as we do, that the confidential and fiduciary relationship was in existence at the time of its execution, we are of the opinion that there was ample advice of a competent person disconnected from the grantee and devoted to the interests of the grantor to overcome the presumption of invalidity. At the time of the-execution of the deed there was present an able and honorable member of the bar who had prepared the deed pursuant to the complainant’s previous request, as well as a will. There were also present Mr. Man-gum, a bank official, and long friend of the family, a doctor who testified as to the *437 grantor’s mental alertness, and a notary-public who acknowledged the instrument. Their testimony was that the deed and other instruments were read to the complainant and that she was mentally alert and competent to transact business. As a matter of fact, their testimony was in agreement to the effect that the complainant directed changes to be made in the will as it was not drawn in some particular as she had previously directed. We think this indicative of an understanding mind and memory at the time. Additionally, their testimony was that the complainant directed her attorney to prepare a general power of attorney designating the defendant to be her agent and that the same was then dictated in her presence and with her understanding. The notary who had taken the dictation testified that the power of attorney was typed the following day by her and subsequently executed by the complainant, again indicating, we think, the competency of the complainant. The chancellor found from this evidence that the complainant had the mental capacity to do that which she had done.
Though perhaps unnecessary to this opinion, we note that by the deed it cannot be considered a conveyance without consideration. By its terms there is reserved to the grantor a life estate with no accountability for waste committed thereon. The sum of $5,000 per year for the remainder of the grantor’s life is, in our opinion, substantial and adequate consideration as the chancellor found. With due regard being given to the age of the grantor, the nature of the conveyance, the consideration therefor, its security by appropriate deeds of trust, we are unable to state that the defendant did not adequately meet the burden of proof necessary to overcome the presumed invalidity of the deed.
It is our conclusion that an opinion of the chancellor to the contrary would have been the equivalent of stating that once a confidential relationship comes into existence, the resulting presumption of invalidity of business transactions within the relationship cannot be overcome by clear and preponderating evidence with the distinct possibility that justice flowing from truth would thereby be thwarted. We, therefore, affirm the chancellor in his refusal to cancel the deed.
Each of the numerous charges of fraud and the evidence adduced thereon have received our consideration and have been determined to be without substantial basis in fact. The desires and wishes of the complainant expressed and consummated in the presence of disinterested witnesses, the execution of a warranty deed to the defendant, the execution of a general power of attorney to him, the devise by will of the residue of her estate to him, after specific bequests to others, and the execution of the joint bank account, are of striking similarity to the previous transactions between the complainant and the defendant and, though not witnessed by others, corroborates his testimony.
He is fortunate this suit was brought within the lifetime of the complainant so that her testimony could be weighed and considered with the remainder of the evidence. Overall it does reveal, in our opinion, that the complainant was the dominant figure in the various transactions and that her will knowledgeably made, not his, was expressed and carried out. We affirm.
Affirmed.
GILLESPIE, P. J., and JONES, SMITH and ROBERTSON, JJ., concur.