728 F.2d 748
 20 ERC 1950, 1984 A.M.C. 2951, 14
Envtl. L. Rep. 20,397,
14 Envtl. L. Rep. 20,521
 STATE OF LOUISIANA, ex rel. William J. GUSTE, Jr., Attorney
General, et al., Plaintiffs,
Ventura Trading Co., Limited, Inc., et al., Plaintiffs-Appellants,
v.
The M/V TESTBANK, Her Engines, Tackle and Apparel, Her
Owners, Etc., et al., Defendants,
Partenreederei M/S Charlotta, Etc., et al., Defendants-Appellees.
 No. 82-3059.
 United States Court of Appeals,
Fifth Circuit.
 April 2, 1984.
Opinion on Granting of Rehearing En Banc May 14, 1984.
 
 Gelpi, Sullivan, Carroll & Laborde, Christopher A. Helms, Gerard T. Gelpi, New Orleans, La., for Ventura et al.
 Sidney D. Torres, III, Kenneth B. Krobert, Chalmette, La., for Gulf Outlet et al.
 Phelps, Dunbar, Marks, Claverie & Sims, James B. Kemp, Jr., New Orleans, La., for Farrell Lines, Inc.
 Leger & Mestayer, Walter J. Leger, Jr., Courtenay, Forstall, Grace & Hebert, Thomas J. Grace, Theodore W. Brin, New Orleans, La., for Plaintiffs' Committee.
 Farris, Ellis, Cutrone & Gilmore, Patrick L. Burke, Jr., J. Dwight LeBlanc, Kenneth J. Servay, Robert B. Fisher, Jr., New Orleans, La., for Partenreederei.
 Walter Carroll, Jr., Jean Melancon, New Orleans, La., for Fortune Sea and London Steamship.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before WISDOM, REAVLEY and HIGGINBOTHAM, Circuit Judges.
 PER CURIAM:
 
 I.
 
 1
 On July 22, 1980, the M/V SEA DANIEL collided with the M/V TESTBANK in the Mississippi River Gulf Outlet. This collision resulted in the spillage of a large quantity of highly toxic chemicals that were being carried aboard the TESTBANK. Because of the spillage, federal and state authorities closed off a large area of the Outlet and nearby waterways to navigation and commercial fishing for nearly three weeks.
 
 
 2
 The owners of the two vessels filed petitions for limitation of or exoneration from liability in the United States District Court for the Eastern District of Louisiana. Various parties filed claims in the limitation action; others filed complaints against the shipowners. The numerous cases involving the collision were all consolidated in the district court.
 
 
 3
 On December 16, 1981, the district court granted in part the defendants' motion for summary judgment and dismissed all of the plaintiffs except the commercial fishermen and oystermen. State of Louisiana ex rel. Guste v. M/V Testbank, E.D.La.1981, 524 F.Supp. 1170. In accordance with rule 54(b) of the Federal Rules of Civil Procedure, the district court certified this decision as a final judgment with respect to the dismissed plaintiffs.[1] Those plaintiffs, now the appellants before this Court, comprise two groups of persons or businesses that allegedly suffered injury because of the closure of the Outlet: (1) vessel owners and terminal operators who lost profits and incurred additional expenses because of shipping delays ensuing from the closure of the Outlet, and (2) various commercial businesses (e.g., seafood dealers, marina operators, and bait and tackle shops) who suffered a loss in trade because of the closure.
 
 II.
 
 4
 Building on the Supreme Court's decision in Robins Dry Dock & Repair Co. v. Flint, 1927, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290, the Fifth Circuit Court of Appeals has developed a doctrine of maritime law that controls the outcome of this case: in a suit based upon the alleged negligence of a defendant, a plaintiff cannot recover consequential economic losses if the alleged negligence has not caused any physical damage to the property or person of the plaintiff. Akron Corp. v. M/T Cantigny, 5 Cir.1983 (per curiam), 706 F.2d 151, 153; accord Kingston Shipping Co. v. Roberts, 11 Cir.1982 (per curiam) (summary calendar), 667 F.2d 34, 35, cert. denied, 458 U.S. 1108, 102 S.Ct. 3487, 73 L.Ed.2d 1369; see also Vicksburg Towing Co. v. Mississippi Marine Transport Co., 5 Cir.1980, 609 F.2d 176; Louisville & Nashville Railroad Co. v. M/V Bayou Lacombe, 5 Cir.1979, 597 F.2d 469; Dick Meyers Towing Service, Inc. v. United States, 5 Cir.1978, 577 F.2d 1023, cert. denied, 1979, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455.
 
 
 5
 The factual situation in the present case is in all relevant respects indistinguishable from that in Akron (and Kingston ). In Akron, the defendant vessel grounded in the Southwest Pass of the Mississippi River and thereby prevented large vessel traffic from entering or leaving that part of the river for several days. Owners and charterers of vessels blocked by the closure of the pass sued for additional expenses and other damages caused by the ensuing delays. Basing its decision on the Robins doctrine, the Court of Appeals affirmed the district court's grant of summary judgment for the defendant. The result was the same in Kingston. These cases are dispositive of the present appeal.
 
 
 6
 The decision of the district court is AFFIRMED.
 
 
 7
 WISDOM, Circuit Judge, concurring.
 
 
 8
 I write separately to suggest that the Fifth Circuit Court of Appeals reconsider this case en banc.
 
 
 9
 The Fifth and Eleventh Circuit decisions cited in the panel opinion have extended the Robins doctrine far beyond the actual holding of the Supreme Court in that case. In Robins, the propeller of a ship was negligently damaged by the operators of a shipyard. This damage caused a delay in the return of the ship to sea, and a party who had chartered the ship sued the shipyard for the charterer's economic losses that were sustained because of the delay. The plaintiff won in the trial court and on appeal to the Second Circuit Court of Appeals. The Supreme Court reversed, holding that the shipyard's damage to the propeller wronged only the owner of the ship. The Court further held that, because the charterer's contract with the shipowner was unknown to the repair yard, the contract was a matter of indifference to the yard. Therefore, negligent interference with the contract would furnish no basis for an action against the shipyard for profits lost by the charterer. As the Court stated,
 
 
 10
 [the plaintiff's] loss arose only through [its] contract with the owners--and while intentionally to bring about a breach of contract may give rise to a cause of action, no authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other, unknown to the doer of the wrong. The law does not spread its protection so far.
 
 
 11
 275 U.S. at 308-09, 48 S.Ct. at 135 (citations omitted).
 
 
 12
 Thus, Robins holds only the following: if a defendant's negligence injures party A, and the plaintiff suffers economic loss because it had a contract with A, the plaintiff has no cause of action against the defendant based on the defendant's negligence. The Fifth Circuit has extended Robins unnecessarily by establishing an absolute requirement of physical property damage. This extension is certainly not required by Robins, and the physical-damage requirement is itself artificial.[1] There is only one justification for this requirement: given that Robins establishes a policy of restricting the type of plaintiff who can recover for a defendant's negligence, physical property damage furnishes an easily discernible boundary between recovery and nonrecovery.
 
 
 13
 In my opinion, the utility derived from having a "bright line" boundary does not outweigh the disutility caused by the limitation on recovery imposed by the physical-damage requirement. In Robins a great judge, Oliver Wendell Holmes, had an off-day.[2] If the Court were writing on a blank slate, I would recommend holding the defendants liable for all of the harm proximately caused by their negligence. The resulting liability in accidents such as the one here would indeed be large, but it could be handled by the insurers of the shipping companies. Placing the losses on the shippers' insurers would ensure that the shipping industry pays for all of the costs that result from the activities of the industry. Such a result would be fairer to persons who were injured by the activities of the shipping industry, and it would also induce the industry to adopt measures to minimize the harm that the industry imposes on others. The Court's concern with preventing the filing of lawsuits of a highly speculative nature, see Akron, 706 F.2d at 153, can be adequately addressed within the doctrinal context of traditional tort requirements of foreseeability and proximate causation.
 
 
 14
 But of course, the Court is not writing on a blank slate; we must follow Robins. Nonetheless, we need not extend Robins beyond the holding of that case. The Fifth Circuit Court of Appeals should reconsider this case en banc and repudiate the doctrine that physical property damage is prerequisite to recovery of economic losses. In a situation such as that presented by the instant case, the only parties who should be precluded from recovering are those who sustain economic losses because they have contractual dealings with persons who are directly injured by the defendant's negligence. This result is both fairer and more justifiable economically than the result mandated by Akron.
 
 
 15
 ON SUGGESTIONS FOR REHEARING EN BANC.
 
 
 16
 Before CLARK, Chief Judge, BROWN, WISDOM, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM and DAVIS Circuit Judges.
 
 BY THE COURT:
 
 17
 A member of the Court in active service having requested a poll on the applications for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,
 
 
 18
 IT IS ORDERED that this cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.
 
 
 
 [1]
 While this appeal was pending, the district court proceeded to adjudicate the liability of the defendants with respect to the remaining plaintiffs. On January 5, 1984, the court issued a final judgment holding that the collision was caused by the negligence of those navigating the SEA DANIEL. On January 18, 1984, the owners of the SEA DANIEL filed a notice of appeal
 
 
 [1]
 For example, if a vessel negligently crashes into one marina and then sinks, thereby blocking all access to another marina, the first marina may recover all of its consequential economic losses, but the second may not
 
 
 [2]
 As legal historians have noted, Justice Holmes attempted throughout his career to restrict liability as much as possible. See G. Gilmore, The Death of Contract 14-17 (1974). This concern for limiting liability is out of step with contemporary tort doctrine