Charles L. WALKER,
Plaintiff-Appellant,

v.

U–HAUL CO. OF MISSISSIPPI, U-Haul
International, Inc. and Amerco, etc.,
Defendants-Appellees.

No. 83–4035.

United States Court of Appeals,
Fifth Circuit.

June 25, 1984.

Gilbert & Powell, A. Spencer Gilbert, III, Jackson, Miss., for plaintiff-appellant.

Butler, Snow, O'Mara, Stevens & Cannada, Alan W. Perry, Fred Krutz, III, Jackson, Miss., Gary Klinefelter, Phoenix, Ariz., for defendants-appellees.

Before RUBIN, JOHNSON and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A franchisee of a major do-it-yourself moving company claims that the company and its subsidiaries fraudulently induced him to surrender his service station and enter into a new lease and franchise agreement under which the company raised his rent to a level that made it impossible for him to continue in business. He seeks damages for violations of both federal and state antitrust laws, for violation of Mississippi's franchise statute, and for fraud and breach of fiduciary duty under the common law of Mississippi. The district court entered summary judgment in favor of the defendants on all claims. We affirm as to the antitrust and franchise-statute claims, but, finding that the common law claims turn on disputed material issues of fact, we remand those claims for trial.

## I.

In reviewing a summary judgment we evaluate the evidence in the light most favorable to the non-moving party. *Poller*

*v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Viewed in that light, the affidavits and depositions indicate the following: Charles Walker operated a series of service stations in Jackson, Mississippi over a period of some fourteen years.[1] He used these service stations as a base of operations to rent trucks and trailers for U-Haul, a company that specializes in local and one-way rentals of such equipment. U-Haul dealers rent company-owned equipment at prices set by U-Haul. U-Haul pays its dealers a commission based on a percentage of gross rental. In 1975, when Walker was operating a Union 76 station, a U-Haul representative proposed that Walker give up the service station and become the operator of a new U-Haul "moving center" to be located nearby on company-owned property. A moving center is devoted exclusively to renting U-Haul equipment and supplies and does not render other services. During the course of negotiations, Walker alleges, U-Haul represented to him that the rent for the moving center would be "reasonable," increasing only as Walker's sales increased.

Walker agreed to this arrangement, and he and his wife opened the moving center in September 1975, operating it rent-free until early 1976. During this time, Walker continued to operate his service station. In March, however, he agreed to give up the station and work at the moving center full time. At this point, U-Haul produced a moving center agreement and lease agreement for him to sign. The lease agreement was for a period of one year. When Walker requested a three-year lease to "evidence [U-Haul's] long-term commitment," he was told that a one-year lease was U-Haul's standard term, but that "there would be no problems in obtaining a renew-

al." The lease provided for a monthly rent of $400 and terminated on March 31, 1977.

In February, 1977, after some discussion of a possible rent increase, U-Haul raised the rent to $2500 a month, effective April 1. This amount was approximately equal to Walker's net income from the moving center. Walker continued to tender monthly rent checks in the amount of $400, which U-Haul refused to accept. Ultimately, Walker vacated the premises after receiving notice to quit from U-Haul's attorney.

Walker contends that U-Haul's actions violated sections 1 and 2 of the Sherman Act,[2] the Mississippi antitrust statute,[3] and the Mississippi franchise statute.[4] In addition, he seeks to recover damages in tort for U-Haul's alleged fraudulent representation that rent would be increased only in proportion to Walker's income. U-Haul denies that it made any such representation, but it further argues that, if it did, evidence of such a promise is barred by Mississippi's statute of frauds.

## II.

The district court entered summary judgment in favor of U-Haul on Walker's Sherman Act claims and pendent state antitrust claim.[5] Summary judgment is generally disfavored in antitrust cases, which often hinge on issues of motive, intent, and credibility.[6] Nevertheless, we have recognized that a plaintiff may not immunize himself against the entry of summary judgment simply by alleging a violation of the antitrust laws. As in other types of cases, if the pleadings and accompanying evidentiary materials, when viewed in the light most favorable to the non-moving party, raise no "genuine issue as to any material fact," and it appears that the moving party is entitled to judgment as a matter of law, the court may

---

1. For a period of "not quite a year" in 1971, Walker lived in Salt Lake City, where he was in the wholesale battery business.

2. 15 U.S.C. §§ 1, 2 (1982).

3. Miss.Code Ann. § 75–21–1 (1972).

4. Miss.Code Ann. § 75–24–53 (Supp.1982).

5. The parties and the district court have treated the state and federal antitrust claims as analytically identical. We follow suit.

6. *See, e.g., Aladdin Oil Co. v. Texaco, Inc.,* 603 F.2d 1107, 1111 (5th Cir.1979), *citing Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

properly enter judgment.[7] Moreover, the party opposing summary judgment may not rely merely on the pleadings or even on conflicting testimony, but must introduce *"significant evidence* demonstrating the existence of a genuine fact issue."[8]

Treating Walker's complaint as one alleging injury only to intrabrand competition, the district court correctly held that U-Haul was entitled to summary judgment. The district court treated U-Haul's alleged anticompetitive acts as an instance of a vertical rather than a horizontal restraint of trade, thereby subjecting them to a "rule of reason" rather than a "per se" antitrust analysis under section 1 of the Sherman Act.[9] *See Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). Walker has not challenged this determination on appeal.

Walker seeks to fit this case within the pattern of a vertical refusal-to-deal or dealer termination. *See Aladdin Oil Co. v. Texaco, Inc.,* 603 F.2d 1107 (5th Cir.1979); *Industrial Building Materials, Inc. v. Interchemical Corp.,* 437 F.2d 1336 (9th Cir. 1970). Under the *Colgate* doctrine,[10] an individual seller may unilaterally select those with whom it will deal. If, however, the seller combines with others to exercise this right of selection to achieve some anticompetitive goal, it runs afoul of section 1.[11] The typical dealer-termination case involves a manufacturer or wholesaler that terminates a business relationship with an independent distributor who has the power to set his own prices. Such action by the manufacturer, conspiring with other distributors or with its own direct customers, may reduce price competition and drive out of business distributors who offer a variety of product lines.[12] Consumers may be deprived of the benefits of both interbrand and intrabrand competition.

■ But Walker, as a U-Haul franchisee, was not in a position to set prices; that was done by U-Haul. He was essentially an agent for U-Haul, and the substitution of a salaried agent for one who, like Walker, worked on commission could not possibly have had any effect on intrabrand competition, let alone a significant effect. *See Action Towing and Rental v. U-Haul International,* 507 F.Supp. 987, 992 (E.D.La. 1981), *aff'd,* 683 F.2d 415 (5th Cir.1982). If U-Haul's conduct had no anticompetitive effect, it does not violate section 1 of the Sherman Act when tested under the rule of reason. Summary judgment in favor of U-Haul was therefore appropriate.[13]

Walker asserts that the district court overlooked evidence tending to show that U-Haul's actions had the purpose and effect of decreasing competition between the three major companies in the one-way truck and trailer rental market—U-Haul, Ryder, and Hertz. Walker argues that U-Haul's plan was to induce him to relinquish his service station and assume the full-time operation of the Northview Moving Center by falsely promising that he could remain

---

7. Fed.R.Civ.P. 56(c). *See Transource International v. Trinity Industries, Inc.,* 725 F.2d 274 (5th Cir.1984); *Bayou Bottling, Inc. v. Dr. Pepper Co.,* 725 F.2d 300 (5th Cir.1984).

8. *Transource International v. Trinity Indus., Inc.,* 725 F.2d 274, 279 (5th Cir.1984), *quoting Parsons v. Ford Motor Co.,* 669 F.2d 308, 313 (5th Cir.), *cert. denied* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982) (emphasis added).

9. "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal...." 15 U.S.C. § 1 (1982).

10. *United States v. Colgate & Co.,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). *See also* *United States v. Parke, Davis & Co.,* 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960).

11. *Aladdin Oil,* 603 F.2d at 1115–16; *Dougherty v. Continental Oil Co.,* 579 F.2d 954, 961 n. 3 (5th Cir.1978), *judgment vacated,* 591 F.2d 1206 (5th Cir.1979).

12. *See, e.g., Industrial Building Materials,* 437 F.2d at 1342.

13. It is thus unnecessary for us to determine whether a parent corporation is capable of conspiring with its subsidiaries in violation of § 1. *See Copperweld Corp. v. Independence Tube Corp.,* 691 F.2d 310 (7th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 3109, 77 L.Ed.2d 1365 (1983).

there at a reasonable rent. By subsequently raising the rent to a level that he could not possibly afford, Walker claims, U-Haul not only ensured that Walker would no longer be a U-Haul dealer; it also prevented him from using his former service station as a base of operations for a Ryder or Hertz franchise. Thus, Walker portrays himself as a pawn in the anticompetitive game U-Haul was playing against Ryder and Hertz.

U-Haul counters that the district court overlooked this evidence, if such evidence exists, for a very good reason: Walker never pled this theory of recovery in the district court. His complaint was, as the district court noted, vague. But the apparent thrust of it was that U-Haul sought to eliminate competition between U-Haul franchisees like Walker and company-operated moving centers, not between U-Haul and Ryder and Hertz. In paragraph nineteen of his amended complaint, for example, Walker asserts, "The representations and the actions of defendants were part of a plan and scheme among the defendants by fraudulent misrepresentations and by economic coercion to eliminate Walker *as a U-Haul dealer and Moving Center operator* in the Jackson, Mississippi area." [14] (Emphasis added.) Similarly, paragraph eighteen states that U-Haul was implementing a scheme "to insure that company-owned and operated moving centers were the only retail outlets located in profitable urban locations including Jackson, Mississippi." The complaint makes no mention of Ryder, Hertz, or indeed of any effect on interbrand, as opposed to intrabrand, competition.

In response, Walker points to the definition of the relevant markets in his amended complaint as the "trailer and one-way truck [rental] markets" in Jackson. Even under the liberal requirements of notice pleading, it is doubtful that such an incidental reference to the relevant markets suffices to plead a theory of recovery that is markedly different from that sketched out in the rest of the complaint. Walker also cites his answer to one of U-Haul's interrogatories, in which he stated that his termination as a U-Haul dealer resulted in the "elimination of all substantial competition in the relevant markets in Jackson." In addition, Walker's wife testified at her deposition that "[i]f Chuck had kept the service station when U-Haul decided to take over all moving centers, he would very definitely have pulled Ryder into that area." Several U-Haul agents testified in their depositions that U-Haul's prime competitors were Ryder and Hertz. And in his memorandum in opposition to U-Haul's motion for summary judgment, Walker argued to the district court that U-Haul had eliminated him as a "potential competitor."

We need not decide whether these references preserved Walker's "interbrand competition" claim for appeal.[15] Even assuming that they did, the summary judgment was proper because Walker offered no evidence to support such a claim. Aside from Mrs. Walker's unsupported assertion, he has suggested no evidence that Ryder or Hertz had any interest in entering into a franchise agreement with Walker. For all that the record indicates, the Jackson market may be glutted with one-way truck and trailer rental outlets. As we have noted, in order to withstand a motion for summary judgment, an antitrust plaintiff must offer evidence that goes beyond unsupported conjecture.[16]

The district court also entered summary judgment in favor of U-Haul on Walker's Section 2 claim,[17] citing *Action Towing*. In

---

14. U-Haul itself operated another moving center located in a different part of the city.

15. *But cf. Automated Medical Laboratories v. Armour Pharmaceutical,* 629 F.2d 1118, 1122–23 (5th Cir.1980) (failure to raise affirmative defense in answer or pretrial order results in waiver; defendant may not raise defense in memorandum in support of motion for summary judgment); *accord, United States v. Vahlco Corp.,* 720 F.2d 885, 890 n. 9 (5th Cir.1983).

16. *See supra* note 8 and accompanying text.

17. "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other persons, to monopolize any part of the trade or commerce among the several

*Action Towing*, a case involving similar facts, the court determined that a U-Haul dealer whose franchise had been terminated did not have standing to bring an action under Section 2 because he had failed to demonstrate "antitrust injury."[18] 507 F.Supp. at 992. The court premised this holding on its finding that U-Haul had the contractual right to require its rental agents to conform to the company's price schedule. This right, the court concluded, meant that the substitution of a company-operated moving center for an agent "caused no change in the intrabrand market." *Id.*

Walker and U-Haul disagree on whether the district court dismissed Walker's Section 2 claim because Walker lacked standing to assert it or because Walker had failed to offer evidence of any injury to competition. Proof of both is essential to antitrust recovery: standing defines the plaintiff's right to sue and the existence of injury is a component of the substantive right.[19] *Action Towing*, which the district court cited without explanation, might relate to either of these. But even if we accept Walker's contention that *Action Towing* is solely a "standing" case, we find that it precludes his success.

*Action Towing* employed the "target area" test to determine standing under section 4 of the Clayton Act;[20] this requires an individual or corporation to be "within that sector of the economy which is endangered by a breakdown of competitive conditions in a particular industry." *Jeffrey v. Southwestern Bell*, 518 F.2d 1129, 1131 (5th Cir. 1975); *see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Walker argues that the analysis employed in *Action Towing* has been undermined by recent Supreme Court decisions in this area, specifically *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982), and *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).[21]

*Associated General Contractors* rejected the "target area" test, as well as the numerous other tests devised by various circuits to determine antitrust standing, recommending instead that "courts should analyze each situation in light of the factors set forth" in the opinion. At 536 n. 33, 103 S.Ct. at 908 n. 33, 74 L.Ed.2d at 737. But neither that case nor *McCready* dispensed with the requirement that a section 4 plaintiff must establish an injury to competition and not merely an injury to himself. *Bayou Bottling, Inc. v. Dr. Pepper Co.*, 725 F.2d 300, 303 (5th Cir.1984). Under the facts of this case, we find that *Action Towing* still controls.[22]

---

states, shall be deemed guilty of a felony...." 15 U.S.C. § 2 (1982).

**18.** *See Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701, 712 (1977) (defining antitrust injury as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful").

**19.** Section 2 does not explicitly require a plaintiff to prove anticompetitive effect; the plaintiff must prove only the existence of monopoly power and the willful maintenance or acquisition of that power. *See United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778, 786 (1966). Injury to competition is apparently presumed to follow from the conduct proscribed by § 2. *See Almeda Mall, Inc. v. Houston Lighting & Power Co.*, 615 F.2d 343 (5th Cir.), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980). Of course, if a plaintiff is unable to prove antitrust injury, he is unlikely to be able to demonstrate a § 2 violation on the merits.

This circuit has held that the concept of antitrust standing applies to violations of § 2 of the Sherman Act. *See Bayou Bottling, Inc. v. Dr. Pepper Co*, 725 F.2d 300 (5th Cir.1984); *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 993–94 (5th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984).

**20.** 15 U.S.C. § 15 (1982).

**21.** *McCready* was decided six months before the district court rendered its decision on Walker's § 2 claim, but the court did not refer to it. *Associated General Contractors* was not decided until after the district court had entered summary judgment.

**22.** Walker seeks to distinguish *Action Towing* on the grounds that the plaintiff in that case was not "driven out of business." In fact, he was

■ Another obstacle to Walker's recovery under section 2 is the absence of any evidence that U-Haul engaged in monopolizing conduct. U-Haul concedes, for the purposes of summary judgment and this appeal, that it possesses "some" monopoly power in the relevant market. But the mere possession of monopoly power, absent evidence that such power was willfully acquired or maintained, does not violate section 2.[23] The record contains no evidence to undermine the thesis that U-Haul's power was acquired by virtue of its superior product and marketing ability, and the Sherman Act does not punish monopolists whose position has been "thrust upon" them. *See United States v. Aluminum Co. of America,* 148 F.2d 416, 429 (2d Cir.1945). U-Haul's termination of Walker's franchise, standing alone, does not constitute evidence of monopolizing conduct. "In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long-recognized right of a trader or manufacturer engaged in an entirely private business freely to exercise his own independent discretion as to parties with whom he will deal." *United States v. Colgate & Co.,* 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919). The existence of such a monopolizing "purpose" is a question of fact, and Walker has offered no evidence tending to show that U-Haul's ac-

tion was so motivated. Such a purpose would indeed be difficult to establish, given the fact that U-Haul possessed exactly the same market share before and after it replaced Walker with a company employee.

■ We conclude, therefore, that Walker raised no genuine issue as to any material fact in regard to U-Haul's claimed antitrust violations. U-Haul was entitled to summary judgment on these claims as a matter of law.

### III.

U-Haul did not give Walker explicit written notice that it was terminating the moving center agreement, which is a "franchise" within the terms of the statute.[24] Walker therefore asserts that U-Haul terminated his franchise without the ninety-day notice required by the Mississippi franchise statute.[25]

The moving center agreement provided that it would terminate automatically, and simultaneously, with the lease agreement, which was to terminate on March 31, 1977. Thus, Walker had agreed that the franchise would terminate on March 31 unless the lease were renewed.

This alone might not satisfy the notice requirement of the franchise statute, which by its terms applies to both definite and

---

subsequently reincarnated as a Hertz dealer. This distinction, of course, is relevant only to Walker's interbrand competition claim, which we have rejected. Walker might, however, have considerable difficulty establishing his standing even to raise the interbrand competition claim. One of the factors set forth by the Supreme Court in *McCready* and *Associated General Contractors* as weighing against finding that a plaintiff has standing is the risk of duplicative recovery. *See McCready,* 457 U.S. at 474, 102 S.Ct. at 2546, 73 L.Ed.2d at 157; *Associated General Contractors,* 459 U.S. at 544, 103 S.Ct. at 912, 74 L.Ed.2d at 742. Assuming that Ryder and Hertz were the ultimate targets of U-Haul's allegedly anticompetitive acts, the risk that U-Haul would be liable for treble damages to both Walker on the one hand, and Ryder or Hertz on the other, is high.

**23.** *See United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); *Fulton v. Hecht,* 580 F.2d 1243, 1247

(5th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979).

**24.** The statute defines "franchise" as follows:
a written arrangement for a definite or indefinite period, in which a person for a consideration grants to another person a license to use a trade name, trademark, service mark, or related characteristic, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement or otherwise ....
Miss.Code Ann. § 75-24-51(6) (Supp.1982).

**25.** Miss.Code Ann. 75-24-53 (Supp.1982). The statute provides:
No person who has granted a franchise to another person shall cancel or otherwise terminate any such franchise agreement without notifying such person of the cancellation, termination or failure to renew in writing at least ninety (90) days in advance of the cancellation, termination or failure to renew ....

indefinite agreements and requires notification of a "failure to renew." Miss.Code Ann. §§ 75–24–51(6), 75–24–53 (1972). But Walker was not actually required to vacate the premises until September 30. He in fact continued to operate as a U-Haul dealer at the moving center until October 3, although U-Haul refused to accept the $400 rent he tendered after March. On April 1, six months before he was required to cease doing business, U-Haul wrote a letter to Walker explaining that "lease has expired as of March 31, 1977," and returning his check in the amount of $400.

■ Although the Mississippi courts have not yet interpreted the state's franchise statute, we are confident that they would hold that Walker had actual notice in writing of the termination of the franchise agreement well in advance of the ninety days required by the statute. The April 1 letter notified him that the U-Haul lease had been terminated, and the moving center agreement provided that the franchise would terminate simultaneously with the lease agreement. To require U-Haul to provide separate notification of the termination of the franchise would be to construe the statute with dogged literal-mindedness. We discern no attempt by U-Haul to circumvent the requirements of the law, and the objective of the statute—to prevent summary termination of franchise agreements—has been satisfied.

### IV.

The district court rejected Walker's claim that U-Haul breached a fiduciary duty owed him, relying on *Corenswet, Inc. v. Amana Refrigeration, Inc.*[26] *Corenswet* held that the termination of a distributorship, in accordance with a contract provision allowing termination "for any reason," does not violate any duty of good faith.

After the district court's decision in this case, we decided *Carter Equipment Co. v. John Deere Industrial Equipment Co.*[27] A diversity case arising under Mississippi law, *Carter Equipment* held that the existence of a fiduciary relationship between a franchisor and franchisee is, in Mississippi, a question of fact for the jury. It specifically excepted, however, claims for breach of fiduciary duty grounded on conduct authorized by the provisions of a contract, relying on *Corenswet:* "Unless the contractual terms are unconscionable, illegal, or violative of public policy, fiduciaries, as a practical matter, acknowledge that activity in conformance with the terms of the contract cannot amount to misconduct that constitutes a breach of a fiduciary duty."[28]

The U-Haul moving center agreement permitted either party to terminate the relationship without cause by giving the other party prior written notice. The district court found that these terms were not unconscionable, and Walker has not challenged that conclusion here. He has, however, vigorously protested that the alleged breach lies in U-Haul's fraudulent inducement *before* he entered the contract, not in U-Haul's termination of his franchise. *Corenswet* involved no such claim of bad-faith conduct preceding the contractual relationship at issue; it merely held that a manufacturer may act arbitrarily in terminating a business relationship with a distributor, if arbitrariness is authorized by a contractual provision. Under the broader explanation provided by *Carter Equipment*, U-Haul's alleged misrepresentations could not constitute "activity in conformance with the terms of the contract."

■ *Carter Equipment* outlined several factors to guide the jury in determining when a contractual relationship has given rise to a fiduciary relationship.[29] Among

**26.** 594 F.2d 129 (5th Cir.), *cert. denied,* 444 U.S. 938, 100 S.Ct. 288, 62 L.Ed.2d 198 (1979).

**27.** 681 F.2d 386 (5th Cir.1982).

**28.** *Id.* at 392 n. 14.

**29.** U-Haul brings to our attention the fact that other circuits have rejected or narrowed the position that a franchise relationship may give rise to a fiduciary duty. *See Bain v. Champlin Petroleum Co.,* 692 F.2d 43, 48 (8th Cir.1982); *Murphy v. White Hen Pantry Co.,* 691 F.2d 350 (7th Cir.1982). We are, of course, bound by our decision in *Carter Equipment* unless the Mississippi Supreme Court repudiates its interpretation of Mississippi law, or unless the court sit-

them are whether "the parties ... have mutual or shared intentions," and whether "the franchisor has power to control the franchisee."[30] Walker offered ample evidence to warrant submitting the question to a jury. His business relationship with U-Haul prior to the alleged fraud had lasted almost continuously for fourteen years. The moving center agreement itself recites that "the relationship created by this Agreement must at all times be mutually beneficial," and that "the relationship between the parties is one of trust." U-Haul's economic power over Walker is obvious and undisputed. But Walker's claim is premised on the admissibility of evidence that U-Haul promised to maintain his rent at a reasonable level. U-Haul has interposed the Statute of Frauds as a bar to admitting such evidence in connection with Walker's fraud claim. If, in fact, Mississippi would bar such evidence in a suit for fraud, it would likely do so in a suit for breach of fiduciary duty. Finding that Walker's fraud and fiduciary duty claims are thus inextricably linked, we turn to a consideration of whether he may properly maintain an action for fraud on the basis of a promise that is itself unenforceable under the Statute of Frauds.

## V.

Claiming that U-Haul had no intention of maintaining the rent at a reasonable level at the time it promised to do so, Walker seeks to recover damages for the tort of fraud and deceit. In reliance upon that alleged promise, Walker says, he relinquished his successful service station business and the possibility of using it as a base for a Ryder or Hertz dealership.[31]

Although a mere prediction of future events is ordinarily insufficient to establish tort liability on the part of the speaker, virtually all jurisdictions recognize such liability if the speaker misstates a present intention or makes a promise without the intent to perform it.[32] Mississippi follows the general rule.[33] U-Haul asserts, however, that Mississippi would not allow tort liability to be predicated on a promise that is itself unenforceable under the Statute of Frauds. Mississippi's Statute of Frauds provides that leases for a term longer than one year, and agreements not to be performed within fifteen months, must be in writing in order to be enforceable.[34] The alleged promise to renew Walker's rent at a reasonable level would fall into either of those categories. Walker argues that, although the Statute of Frauds bars specific performance of the promise, it does not prevent him from recovering damages in tort.

Although both U-Haul and Walker cite cases in support of their respective positions, none of them render such buttress. *Lewis v. Williams*,[35] a 1939 case that was

---

ting en banc overrules it. *See State of Louisiana ex rel. Guste v. M/V Testbank*, 728 F.2d 748, 750 (5th Cir.1984) (Wisdom, J., concurring). In any event, *Bain* and *Murphy* were interpreting Missouri and Wisconsin law, respectively, not Mississippi law. Moreover, neither of them involved the termination of a franchise or dealership agreement. *See Bain*, 692 F.2d at 48; *Murphy*, 691 F.2d at 355; *see also Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 485 (5th Cir.1984) ("Except in cases of franchise termination, in which courts have refused to give literal effect to the language of the franchise agreement, courts have not imposed general fiduciary obligations upon franchisors.").

**30.** 681 F.2d at 391.

**31.** As we noted in connection with Walker's antitrust claims, there is no record evidence that Ryder or Hertz would have been interested in employing Walker as a dealer. We do not,

however, see Walker's claim that he might have become a competing dealer as essential to his action for fraud; there is evidence that he might have continued as a service station operator, and that is sufficient.

**32.** W. Prosser, Handbook of the Law of Torts 728–29 (4th ed. 1971).

**33.** *See McArthur v. Fillingame*, 184 Miss. 869, 186 So. 828 (1939); *Mississippi Power Co. v. Bennett*, 173 Miss. 109, 161 So. 301 (1935); *Gross v. McKee*, 53 Miss. 536 (1876).

**34.** *See* Miss.Code Ann. § 15-3-1 (1972).

**35.** 186 Miss. 701, 191 So. 479 (1939). That case involved a family dispute concerning a tract of land. Tony Williams had, before he died, conveyed part of the tract to his son, Patrick Williams. Shortly after this conveyance, title to the

also the basis for the district court's entry of summary judgment in favor of U-Haul on Walker's tort claim, is distinguishable from this case on several grounds. First and most obviously, it was not a suit for damages in tort but in effect one for specific performance of an oral promise. Walker does not seek to hold U-Haul to its alleged promise to renew his lease at a reasonable rent, but to recover the damages he sustained in relying on that promise. Second, the *Lewis* court noted that "[t]here was no trust relationship between" the plaintiff and the defendants.[36] As we have noted, there is sufficient evidence of a fiduciary relationship between Walker and U-Haul to warrant sending the question to the jury, should evidence of the alleged oral promise be admissible. Third, the *Lewis* court clearly premised its holding, at least in part, on the fact that the plaintiff suffered no damage from relying on the defendants' alleged promise.[37] Walker, in contrast, claims that he gave up his service station at U-Haul's urging and was unable to resume operations there after U-Haul made it impossible for him to continue as a U-Haul dealer.

This interpretation of *Lewis* is strengthened by the Mississippi cases permitting a plaintiff to recover damages for expenses incurred in reliance on an oral promise to convey land, even when specific performance of the promise is barred by the Statute of Frauds. The seminal case is *Welch v. Lawson*, 32 Miss. 170 (1856), in which the defendant had orally agreed to sell land to the plaintiff for a certain price. The plaintiff took possession of the land, moving his family and his belongings some fifteen miles to do so. The court held that he had a cause of action for recovery of these expenses, saying:

> If it were true that the action was brought to recover damages resulting merely from a violation of the parol agreement, the demurrer should have been sustained. But such was not the nature of the action. It was intended to recover damages resulting from the fraudulent conduct of the defendant. The plaintiff was seeking compensation for his trouble and loss of time, and not compensation for the loss of a bargain, in not getting the land, about which the parties had a parol understanding.

> \*　　\*　　\*　　\*　　\*　　\*

> [T]he defendant knew the extent to which he was trusted and had, by his own act, secured the confidence of the plaintiff.... Under such circumstances, while it is unquestionably true that no action can be maintained, either to recover damages for the loss of the land, or bargain, or for a specific performance—yet to hold that the action cannot be sustained to recover for the injury or loss already named, would be equivalent to saying that the subject was one in regard

---

land vested in the state for nonpayment of taxes. Patrick wanted to repurchase the land from the state, but lacked the wherewithal. Some relatives—who later became the defendants in the lawsuit—suggested to Patrick that they could finance the purchase, but only by borrowing the money from someone else. After the patent on the land had been issued and delivered to Patrick, the lender notified the parties that he would lend money only to the relatives, not to Patrick. The parties then agreed to let the patent stand as issued to Patrick, but that he would subsequently execute a quitclaim deed in favor of one of the relatives. Title was thus put in the relative. Patrick claimed that he executed this deed in reliance on the relatives' alleged oral promise to reconvey the land to him if he paid them the amount they had paid to the state. This the relatives later refused to do.

Patrick then sued to cancel the deeds held by the relative on the grounds that a constructive trust had been created by the alleged oral promise to reconvey the land. The Mississippi Supreme Court held that the action was barred by the Statute of Frauds, which requires that contracts for the sale of lands be in writing.

**36.**　191 So. at 481.

**37.**　*Id. See supra* note 34. Patrick Williams had no claim to the land at the time he executed the quitclaim deed in favor of the relatives: "On and after April 6, 1933, the title to these lands, as agreed in this record, was absolutely in the State of Mississippi. Neither Tony Williams, nor his heirs-at-law, nor Patrick Williams, had any title whatever to the land.... Patrick Williams ... never paid a cent for these lands."

to which fraud or bad faith could not be practiced.[38]

Far from being a forgotten antiquity, *Welch* and its holding have been relied on by the Mississippi Supreme Court as recently as 1962.[39] The cases relying on *Welch* have all concerned oral promises for the sale of land, and not, as here, a lease extending beyond one year or an agreement not to be performed within fifteen months. But we doubt that Mississippi would apply a different rule to a lease. With regard to the admissibility of parol evidence, the statute draws no distinction between an agreement to sell land and the making of a lease for a term longer than one year, covering both of these promises in the same subsection.[40]

■ Mississippi thus shares the majority view in allowing an action for fraud in these circumstances. Dean Prosser notes that cases holding that an action for misrepresentation may not be maintained when the promise itself is unenforceable are

> undoubtedly in the minority.... The prevailing view ... permits the action to be maintained, considering that the policy which invalidates the promise is not directed at cases of dishonesty in making it, and that it may still reasonably be relied on even where it cannot be enforced.[41]

*See also* Restatement (Second) of Torts § 530, comment c.

We recognize that Mississippi has been staunch in its determination not to create exceptions to the statute of frauds unless such exceptions are specifically authorized by statute. *See, e.g., Winstead v. Roberts*, 431 So.2d 1137 (Miss.1983); *Thomas v. Prewitt*, 355 So.2d 657 (Miss.1978). The cases in which this determination has been expressed, however, were suits for specific performance. Mississippi has never ap-

plied the same rule to actions seeking, not merely the benefit of the plaintiff's bargain, but damages incurred in reliance on a defendant's fraudulent oral promise.

If Walker is able to prove that U-Haul promised that his rent would remain reasonable, and that it did so with no present intention to perform that promise, Mississippi law allows him to recover damages incurred by him as a direct result of U-Haul's fraud. *Abraham v. Harvey*, 245 Miss. 449, 147 So.2d 639 (1962); *Cain v. Kelly*, 57 Miss. 830 (1880).

## VI.

We AFFIRM the district court's summary judgment on the allegations that U-Haul violated sections 1 and 2 of the Sherman Act and the Mississippi antitrust statute by failing to renew Walker's rent at a reasonable level. Walker failed to produce evidence of any purpose or effect to injure interbrand or intrabrand competition. Summary judgment was also proper on Walker's claim based on the Mississippi franchise statute, since he had actual notice of the termination of the franchise well in advance of the ninety days required.

■ Summary judgment was, however, improper on Walker's fraud and fiduciary duty claims. The Mississippi Statute of Frauds does not bar an action for damages incurred in reliance on an oral promise that is itself unenforceable. Because Walker may rely on evidence of the promise in proving his fraud claim, he may also introduce such evidence in support of his claim that U-Haul breached a fiduciary duty in inducing him to relinquish his service station. We therefore REMAND for trial of these two claims.

---

**38.** 32 Miss. at 177–78.

**39.** *See Abraham v. Harvey*, 245 Miss. 449, 147 So.2d 639 (1962). *See also Tchula Commercial Co. v. Jackson*, 147 Miss. 296, 111 So. 874 (1927); *Cain v. Kelly*, 57 Miss. 830 (1880).

**40.** Miss.Code § 15–3–1(c) (1972).

**41.** Prosser, *supra* note 32, at 730.